IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION-SIOUX CITY

| | |
|---|---|
| PEG BOUAPHAKEO, et al.,<br>and on behalf of a individually,<br>class of others similarly situated, | :<br>:<br>:   DOCKET NO. 5:07-cv-04009-JAJ-TJS<br>: |
| **Plaintiffs,** | : |
| v. | : |
| TYSON FOODS, INC.<br>Defendant. | :<br>: |

<u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

BRIAN P. MCCAFFERTY
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327
(610) 940-0284 (facsimile)
E-Mail: cafstar@aol.com

MICHAEL HAMILTON
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road, Suite 300
Nashville, TN 37215
(615) 242-0199
(615) 256-5922 (facsimile)
E-Mail: mhamilton@provostumphrey.com

ROGER K. DOOLITTLE
460 Briarwood Drive, Suite500
Jackson, MS 39206
(601) 957-9777
(601) 957-9779 (facsimile)

Attorneys For Plaintiffs

Dated: July 1, 2010

## TABLE OF CONTENTS

I.  INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . 1

II.  SUMMARY OF RELEVANT UNDISPUTED MATERIAL FACTS . . . 5

III.  SUMMARY JUDGMENT STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . 9

IV.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  The Donning And Doffing Of Non-Unique Personal Protective Equipment Such As Frocks And Hard Hats Are Integral And Indispensable To Plaintiffs' Work Activities And Therefore A Principal Activity That Constitutes Compensable Work. . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  Tyson Cannot Rely Upon A De Minimis Defense . . . . . . . . . . . 14

    C.  Tyson Cannot Establish A "Good Faith" Defense Pursuant To 29 U.S.C. § 259 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.  Tyson Cannot Establish A Portal-to-Portal Defense Pursuant To 29 U.S.C. § 254(a) Because The Supreme Court Has Already Ruled In Alvarez That Donning And Doffing Of Required Protective Equipment Is Integral And Indispensable To The Principal Activity Of Meat Processing And Is Therefore Itself A Principal Activity . . . . . . . . . . . . . . 21

    E.  Tyson Cannot Establish A Good Faith Defense To Plaintiffs' Claims For Liquidated Damages Pursuant To 29 U.S.C. § 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

i

## TABLE OF AUTHORITIES

### Cases

Alvarez v. IBP, Inc., 546 U.S. 21, (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Alvarez v. IBP, Inc., 339 F.3d 894, (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . .17

Anderson v. Liberty Lobby, Inc. 477 U.S. 242 (1986). . . . . . . . . . . . . . . . . . . 9

Anderson v. Mt. Clemens Pottery Co.. 328 U.S. 680, 693 (1946). . . . . . . . passim

Armour v. Wantock, 323 U.S. 126, (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ballaris v. Wacker Silitronic Corp., 370 F.3d 901 (9th Cir. 2004). . . . . . . . . . . .12

Bayles v. American Med. Response, 937 F.Supp. (D. Colo. 1996) . . . . . . . . . . 18

Celotex Corp. v. Catrett., 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . 9

Chao  v. Tyson Foods, Inc., 568 F.Supp.2d (N.D. Ala. 2008) . . . . . . . . . . . . . . 12

DeAscencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007). . . . . . . . . . . . 12

EEOC v. Home Ins. Co., 672 F.3d 252 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . 19

Elwell v. Univ. Hosp. Care Service, 276 F.3d 832 (6th Cir. 2002). . . . . . . . . . 23

Garcia  v. Tyson Foods, Inc., 474 F.Supp.2d (D. Kan. 2007) . . . . . . . . . . . . .11-12

Guerrero v. The North Carolina Growers Ass'n, Inc.,
370 F.Supp.2d 386 (E.D.N.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17-18

Hultgren v. County of Lancaster, 913 F.3d 498 (8th Cir. 1990) . . . . . . . . . . . 17-18

Jordan v. IBP, Inc., 542 F. Supp.2d 790 (M.D. Tenn. 2008) . . . . . . . . . . . . . . . 12

Keeley v. Loomis Fargo Co., 183 F.3d 257 (3d Cir. 1999). . . . . . . . . . . . . . . . 19

Kosakow v. New Rochelle Radiology Associates, PC,
274 F.3d 706 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Lindow v. United States, 738 F.2d 1057 (9th Cir. 1984). . . . . . . . . . . . . . . . . . .15

Mascol v. E&L Transp., Inc., 387 F.Supp.2d 87 (E.D.N.Y. 2005) . . . . . . . . . . . .19

Perez v. Montaire Farms, Inc., 601 F.Supp.2d 670 (D. Md. 2009) . . . . . . . . . . .12

Reich v. IBP, Inc., 85 F.3d 356 (10th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . 10-11

Steiner v. Mitchell, 350 U.S. 247, (1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

### Statutes

29 U.S.C. § 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .passim

29 U.S.C. § 249, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION – SIOUX CITY

| | | |
|---|---|---|
| PEG BOUAPHAKEO, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | CIVIL NO. 5:07-cv-04009-JAJ-TJS |
| | * | |
| vs. | * | |
| | * | |
| | * | |
| TYSON FOOD, INC., | * | |
| | * | |
| | * | |
| Defendant. | * | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure 56, Plaintiffs respectfully move for partial summary judgment on Defendant Tyson Foods, Inc.'s (hereafter "Tyson") stated defenses to liability under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and Iowa state law for failing to pay Plaintiffs for all hours of work during the continuous workday each shift.

**I.     INTRODUCTION AND SUMMARY OF ARGUMENT**

Defendant Tyson is liable to Plaintiffs for failing to pay them for actual time spent performing the pre-shift and post-shift donning, doffing and washing of required personal protective equipment (hereafter "PPE") and tools/gear as well as related walking time (to and from the production floor), and waiting time.  Tyson is also liable to Plaintiffs for the time Plaintiffs spend donning, doffing and washing required PPE and tools/gear during their unpaid breaks.

In terms of pre-shift time, this compensable time commences at the performance of the first principal activity that they are required to perform on Defendant's premises (obtaining a

smock or other required PPE and tools/gear from their locker) and runs to the start of their "gang time" on the production floor, including all walking and waiting time. In terms of post-shift time, this compensable time commences at the end of their "gang time" on the production floor and includes all time spent doffing and washing their required PPE and tools/gear up to the performance of the last principal activity for the day (stowing PPE, tools and gear in their locker, disposing of their smock or soiled protective equipment in the laundry bin, which ever comes last), including all walking and waiting time that occurs prior to the last compensable work activity. In terms of unpaid breaks, the lost compensable time includes all time spent during the unpaid break donning, doffing or washing their required PPE.

In <u>Alvarez v. IBP, Inc.</u>, 546 U.S. 21 (2005), the Supreme Court emphatically reaffirmed the wage and hour principle known as the "continuous workday" rule, which requires employers to pay an employee for all activities that occur between the first and last principal activities of the employee's workday. See, <u>Alvarez</u>, 546 U.S. at 28, quoting 29 C.F.R. 790.6(a). The unanimous Supreme Court in <u>Alvarez</u> reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity, and therefore, compensable under the FLSA. <u>Alvarez</u>, 546 U.S. at 37. As applied to the meat processing industry, the Supreme Court specifically held that the donning and doffing of required sanitary and safety equipment is integral and indispensable to meat processing workers' principal work activities and that such activities commenced and concluded the continuous workday. <u>Alvarez</u>, 546 U.S. at 32-33.

Following the Supreme Court's decision in <u>Alvarez</u>, the U.S. Department of Labor ("DOL") issued a Wage and Hour Advisory Memorandum explaining the impact of <u>Alvarez</u> and reiterating its own long-held view that donning and doffing activities required to be performed in

meat processing plants start and end the continuous workday.  See, DOL Wage and Hour

Advisory Memorandum No. 2006-2, May 31, 2006 **(PLAINTIFFS APPX 12-15)**  DOL

specifically advised that obtaining PPE and gear at the beginning of the workday is a principal

activity that triggers the commencement of the compensable workday.  Id., **(PLAINTIFFS**

**APPX 12-14)** ("the compensable day starts once the employee has obtained the gear required to

be stored on the premises by taking an item out of a bin, a locker or another designated storage

area.").

Under controlling Supreme Court law and DOL regulations, as well as DOL's

interpretation of its own regulations, Plaintiffs' compensable workday begins when they perform

the first principal activity of retrieving Tyson-required PPE, tools or gear from their assigned

locker.  This activity is integral and indispensable to Tyson's maintenance of sanitary conditions

for meat processing and required by Tyson for the production of a quality product.

Here, the undisputed factual record establishes that Plaintiffs cannot take home or reuse

their smock or wear it outside the plant.  A new and clean smock must be obtained from their

locker and donned and worn everyday prior to entering the production floor and performing any

meat processing activities on the production line.  Accordingly, obtaining a smock or other items

of PPE from their locker constitutes the first principal activity because this activity must be

performed on Tyson's premises and is pursued primarily for the employers benefit since they are

all company issued and required pieces of safety gear.  See, Anderson v. Mt. Clemens Pottery

Co., 328 U.S. 680, 693 (1946)("donning aprons and overalls 'are clearly work' because these

activities are "controlled or required by the employer and pursued necessarily and primarily for

the employer's benefit.  They are performed solely on the employer's premises and are a

necessary prerequisite to productive work.").

3

In addition to the smock, Plaintiffs must collect and wear a combination of the following items on plant premises prior to performing meat processing work on the production floor: hard hat, hair net, cotton and/or rubber gloves, cut-resistant (Kevlar material) gloves, mesh glove, hard plastic arm guards, mesh apron or belly guard, knives, a scabbard (which is a holster that holds sharp knives), and a steel (which is a tool used to keep a sharp edge on a knife).  On the production floor and prior to commencing meat processing activities, Plaintiffs are required to dip their non-fabric items (which include their arm guards, scabbards, belly guards and steels) in a sanitizing dip tank.  These activities are all compensable as part of the continuous workday because they are integral and indispensable to meat production activities.

In contravention of well-established case law, DOL's regulations and opinion letters, and DOL's enforcement actions, Tyson has continually refused to pay its workers for all actual hours of work that would include all time that each individual worker spends donning, doffing and cleaning PPE, tools and gear.  Instead, Tyson uses an illegal "gang time" payment system which only pays workers for:  (1) the time they spend working on the production line; (2) plus some estimated or average time which Tyson has unilaterally (and incorrectly) determined to be the appropriate compensation.  As a result, Tyson does not fully pay its employees for all time actually spent performing the above-described donning and doffing work activities that are performed pre- and post-shift and during their unpaid meal break.

Plaintiffs seek partial summary judgment on several of Tyson's asserted defenses in this matter.  First, Plaintiffs seek partial summary judgment on Tyson's defense asserted in Paragraph 11 of its listed defenses in its Answer (**Doc. 15**) that some of the activities for which Plaintiffs seek payment are not compensable because the donning or doffing of "standard" or non-unique safety equipment is not compensable.  (**PLAINTIFFS APPX 10**)  Second, Plaintiffs seek partial

4

summary judgment on Tyson's defense asserted in Paragraph 12 of the listed defenses in its Answer (**Doc. 15**) that the "de minimis" defense excuses their non-compliance with the FLSA. (**PLAINTIFFS APPX 10**)

Third, Plaintiffs seek partial summary judgment on Tyson's "good faith" defenses asserted in Paragraph 8 of its listed defenses in its Answer (**Doc. 15**) that Tyson acted in "good faith" pursuant to 29 U.S.C. § 259, in conformity with the Department of Labor regulations and interpretations of the FLSA. (**PLAINTIFFS APPX 9**)   Fourth, Plaintiffs seek partial summary judgment on Tyson's defense asserted in Paragraph 13 of the listed defenses in its Answer (**Doc. 15**) that Plaintiffs' donning and doffing activities are not compensable under the Portal-to-Portal Act, 29 U.S.C. § 254 because they are purportedly "preliminary" or "postliminary" to a principal activity. (**PLAINTIFFS APPX 10**)   Lastly, Plaintiffs seek partial summary judgment on Tyson's stated defense asserted in Paragraph 7 of its listed defenses in its Answer (**Doc. 15**) that Tyson acted in "good faith" pursuant to 29 U.S.C. § 260 and therefore should not be penalized with liquidated damages. (**PLAINTIFFS APPX 9**)

In the Argument section below, Plaintiffs will establish that both the facts of this case and the law support the dismissals of those affirmative defenses.

## II.   SUMMARY OF RELEVANT UNDISPUTED MATERIAL FACTS[1]

Tyson's Storm Lake, Iowa facility is a hog slaughter and processing facility that employs approximately 1500 hourly production workers. **Plaintiffs' Statement of Undisputed Material Facts (hereafter "PSUMF") ¶ 1; (PLAINTIFFS APPX 48)**   The main production departments at the Storm Lake facility are the kill department, the cut department, and the conversion (or "re-trim") department, which form the large majority of the hourly workforce and total

---

[1] Pursuant to Local Rule of Civil Procedure 56, Plaintiffs have filed a separate Statement of Undisputed Material Facts and attached it to their Motion For Partial Summary Judgment.

approximately 1,300 hourly workers.  **PSUMF ¶ 2; (PLAINTIFFS APPX 48)**   Each of these

departments typically run two shifts daily.  Both shifts of the kill department total approximately

380-400 hourly workers.  Both shifts of the cut department total approximately 440-460 hourly

workers.  Both shifts of the conversion department total approximately 440-450 hourly workers.

**PSUMF ¶ 3; (PLAINTIFFS APPX 47-48)**

The kill department (as it is aptly named) slaughters the hog, removes the internal organs,

sends the head, feet and internal organs to the evisceration room, and sends the carcass to the

cooler for cold storage.  The carcass is the two "sides" of the hog which contain edible meat.

The cut department breaks the chilled carcass down into its "primal pieces" which is smaller

parts such as front shoulder, loins, bellies, hind quarters and hams.   Some items are packed for

shipment to customers or other Tyson plants in the cut department and others are sent to the

conversion department for further processing.  The retrim or conversion department involves the

further processing of hams and loins and additional trimming of those products.  **PSUMF ¶ 4;**

**(PLAINTIFFS APPX 49, 63, 70)**

All Tyson production workers at the Storm Lake plant wear at least some items of

personal protective equipment.  All Tyson Storm Lake production workers are required to wear

hard hats, ear plugs, boots and some type of gloves.  Tyson Storm Lake production workers wear

and use some combination of the following items of PPE and tools/gear:  frocks, hard hats, ear

plugs, hair nets, hard plastic arm guards, mesh aprons, mesh sleeves or Kevlar sleeves,

scabbards, cotton gloves, rubber gloves, cut-resistant (Kevlar) gloves, and mesh gloves. Knife

users are also issued knives and a "steel" by the company, which is a tool used to keep a sharp

edge on a knife.  **PSUMF ¶ 5; (PLAINTIFFS APPX 41, 53-54, 62)**

Many of the items of PPE are laundered by Tyson after shift and put in a laundry bag

clean and hung in the lockers of the production employees.  The remaining items that are not

laundered are kept in the employee's locker between shifts.  Such items would include (if the

employee is required to use them) the plastic arm guard, the mesh apron, the knives, the

scabbard, hard hats, ear plugs, possibly mesh sleeves (which are sometimes laundered).  **PSUMF**

**¶ 6; (PLAINTIFFS APPX 55-57, 68)**

Employees are not permitted to take their items of PPE home, they must leave them in

their locker between shifts.   Production workers who use knives are issued knives, scabbards,

steels by the company.  **PSUMF ¶ 7; (PLAINTIFFS APPX 53, 57, 62)**

Tyson Storm Lake hourly production workers must have all required and cleaned

personal protective equipment on before the first piece of meat product hits their work station.

Employees are not permitted to perform work on the production line without wearing all required

personal protective equipment and they are disciplined if they are not wearing their required

PPE.  **PSUMF ¶ 8; (PLAINTIFFS APPX 39-31)**

Tyson pays its Storm Lake hourly production workers in the kill, cut and conversion

departments on a "gang time" basis.  "Gang time" is the time that processing lines are moving

and during which production workers are physically at the assembly line while the lines are

moving and producing product.  "Gang time" uniformly does <u>not</u> record time that production

workers spend donning, doffing, and cleaning themselves and their personal protective

equipment before and after line time and at unpaid meal breaks.  **PSUMF ¶ 9; (PLAINTIFFS**

**APPX 37, 58-60)**

In addition to "gang time" Tyson currently pays its hourly production workers "extra"

minutes per day to purportedly compensate them for donning, doffing and washing their personal

protective equipment.  Prior to 2007, Tyson paid its production workers four (4) minutes a day for donning and doffing their personal protective equipment in they worked in a production department such as kill, cut or retrim/conversion.  **PSUMF ¶ 10; (PLAINTIFFS APPX 71-72)**

The payment of "extra" minutes beyond the gang time for donning and doffing activities is referred to as "K Code" time.  In 2007, Tyson changed their system of paying K Code time to only pay workers who must wear personal protective equipment a range of 4-8 minutes per day.  **PSUMF ¶ 11; (PLAINTIFFS APPX 38, 67 71-72)**

Wage rates at the Storm Lake plant for hourly production employees range from a starting wage of $11 per hour to a maximum of $15.50 an hour.  **PSUMF ¶ 12; (PLAINTIFFS APPX 43A)**  Hourly workers at the Storm Lake plant tend to work a significant amount of overtime on a weekly basis.  Will Sager estimated that Storm Lake hourly workers worked approximately 45-48 hours per week during 2008 and 2009.  **PSUMF ¶ 13; (PLAINTIFFS APPX 43B)**

Production workers at Storm Lake get two breaks during a typical 8-hour shift.  The first break is a paid 15-minute break, and the second break is an entirely unpaid 30-minute break.  During breaks, employees are required to remove all knives, scabbards, arm guards.  **PSUMF ¶ 14; (PLAINTIFFS APPX 32, 64)**  Employees are required to remove almost all of their personal protective equipment, including their frock, before using the rest room.  Employees are only permitted to wear their hard hat and earplugs into the rest room.  **PSUMF ¶ 15; (PLAINTIFFS APPX 65-66)**

Tyson utilizes eight (8) time clocks at the Storm Lake facility, and there are time clocks located at the entrances of the kill, cut and converting departments.  **PSUMF ¶ 16; (PLAINTIFFS APPX 35-36, 44).**  Although the time clocks record the time that hourly workers

punch the clock precisely to the minute, Tyson uses the time clocks only to record attendance. Tyson does not pay its hourly employees based on the punch-in, punch-out times but rather pays them on "gang time." **PSUMF ¶ 17; (PLAINTIFFS APPX 44, 58-61).** It appears from a document produced by Defendant Tyson in this case, that Tyson has at least contemplated moving some of the time clocks close to the locker rooms for the purpose paying production workers "on the clock" for doffing and washing activities at the end of shift such that they would punch out after those activities and Tyson would pay to the punch out time. **PSUMF ¶ 18; (PLAINTIFFS APPX 75).** However, to date, Tyson has not implemented this contemplated change.

## III.   SUMMARY JUDGMENT STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Material facts are those that may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if there exists sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. Id. The moving party bears the burden of identifying which portions of the pleadings, exhibits and discovery materials demonstrate that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials are insufficient. Id.

IV.   **ARGUMENT**

A.   **The Donning And Doffing Of "Non-Unique" Personal Protective Equipment Such As Frocks And Hard Hats Are Integral And Indispensible To Plaintiffs' Work Activities And Therefore A Principal Activity That Constitutes Compensable Work.**

An important issue that this Court should address is whether so-called "non-unique" or "standard" safety equipment is compensable under the circumstances of this case. Defendant Tyson has raised as an affirmative defense to Plaintiffs' claims: "All or part of the time for which plaintiffs or any proposed class members seek compensation does not constitute compensable working time." (See, Tyson's Answer To Plaintiffs' Complaint (**Doc. 15**) Paragraph 11 of its stated defenses) (**PLAINTIFFS APPX 10**). Plaintiffs submit that this Court should reach the opposite conclusion: that donning and doffing "standard" safety equipment are compensable work activities because they are work activities that are "integral" and "indispensible" to the principal activity of meat processing and take place during the continuous work day.

Although not expressly stated in its Answer, Tyson's defense likely relies upon the Tenth Circuit's decision in Reich v. IBP, Inc., 38 F.3d 1123 (10th Cir. 1994), which employers have commonly cited for the premise that the donning of "standard" or "non-unique" items of protective equipment, such as a hard hat or earplugs, are not compensable work activities. In Reich, the Tenth Circuit held that the donning and doffing of standard, non-unique protective material, such as hard hats, ear plugs, boots and safety glasses were not "work" as the FLSA is interpreted because these tasks require little concentration or effort. Id. at 1125.

Tyson's defense - - based upon the premise that donning and doffing "non-unique" or "standard" safety equipment is not "work" as defined by the FLSA and, therefore, is not compensable - - has been severely undermined, if not entirely eliminated, by the Supreme

Court's decision in Alvarez v. IBP, 546 U.S. 21 (2005). In Alvarez, the Supreme Court stated:

"The same year in Armour v. Wantock, 323 U.S. 126 [parallel cite omitted] (1944), we clarified

that 'exertion' was not in fact necessary for an activity to constitute 'work' under the FLSA."

546 U.S. at 25.[2]

Since Alvarez, numerous courts have cited Alvarez as support for either refusing to

follow the Tenth Circuit's Reich v. IBP decision or suggesting that the Tenth Circuit would

likely come to a different decision if it re-visited the same issues in light of the Alvarez decision.

Following the issuance of the Alvarez decision, at least one district court in the Tenth Circuit has

strongly questioned the continued viability of Reich. In Garcia v. Tyson Foods, Inc., 474

F.Supp.2d 1240 (D. Kan. 2007), the district court stated that it was:

> convinced that the [Tenth] Circuit, if given the opportunity to revisit the issues in
> Reich, would approach its analysis of the pertinent issues differently in light of
> Alvarez, regardless of whether the Circuit ultimately reached the same
> conclusions concerning compensability. Significantly, the Circuit did not analyze
> the issues through the lens of the continuous workday rule as clarified by the
> Supreme Court in Alvarez. In light of Alvarez, it would seem that the Circuit, if
> revisiting Reich today, would focus not on whether the donning and doffing
> constituted 'work' within the meaning of Tennessee Coal, but on whether
> standard protective clothing and gear are 'integral and indispensable' to the work
> performed by the production employees. Indeed, the Circuit in Reich, although in
> dicta, certainly stated that standard clothing and gear are integral and
> indispensable to the work performed by production employees, suggesting that the
> Circuit might reach a different conclusion on compensability if analyzed in the
> context of Alvarez.

Garcia, 474 F.Supp.2d at 1246. Also interesting, is the fact that the Tenth Circuit was presented

with an opportunity to overturn or modify the district court's decision in Garcia through an

appeal that was filed by defendant Tyson in that matter. In Garcia v. Tyson Foods, Inc., 534

---

[2] This clarification by the Supreme Court in Alvarez is important because the Tenth Circuit
decision in Reich v. IBP primarily relied upon the Tennessee Coal v. Muscoda Local No. 123,
321 U.S. 590 (1944) case, which preceded Armour, and which Alvarez made clear was clarified
by the subsequent Armour decision.

F.3d 1320 (10th Cir. 2008), the Tenth Circuit dismissed Tyson's appeal and left undisturbed the district court's opinion.[3]

Other post-Alvarez decisions have also assailed the viability of the Tenth Circuit's decision in Reich v IBP.  In DeAscencio v. Tyson Foods, Inc., 500 F.3d 361 (3d Cir. 2007), the Third Circuit rejected Reich v. IBP and concluded that the "better view" was concluding that the time was compensable if the work activities are an integral and indispensible part of the principal activities (relying on the 9th Circuit's decision in Ballaris v. Wacker Silitronic Corp., 370 F.3d 901 (9th Cir. 2004)).  See, DeAscencio, 500 F.3d at 371-72.  Likewise, the district court in Jordan v. IBP, Inc., 542 F.Supp.2d 790 (M.D. Tenn. 2008), also rejected Reich v. IBP, and ruled that the Alvarez, DeAscnecio and Ballaris decisions were all "more persuasive" than Reich.  The district court in Chao v. Tyson Foods, Inc., 568 F.Supp.3d 1300, 1317 (N.D. Ala. 2008) also rejected Reich calling it "non-binding and non-persuasive . . . . "  More recently, in Perez v. Mountaire Farms, Inc., 601 F.Supp.2d 670 (D. Md. 2009), a Maryland district court also rejected Reich v. IBP, concluding that "Reich was decided before the Supreme Court affirmed Alvarez, so its persuasiveness is not compelling."  Perez, 601 F.Supp.2d at 678.

If this Court agrees that the Tenth Circuit's decision in Reich v. IBP is no longer viable, then this Court should also conclude that the donning and doffing of standard equipment is a compensable work activity because it is a principal activity; particularly as these donning and doffing activities pertain to the smock, ear plugs, hard hat, aprons and cotton gloves, which are required to be obtained and donned on the premises of the Tyson Storm Lake plant.

---

[3] The Tenth Circuit discussed at length the Garcia district court's theory regarding whether the Tenth Circuit might reach a different result post-Alvarez, but ultimately did not squarely address the issue of whether Reich v. IBP was still viable law in that Circuit.

In its May 31, 2006 Wage and Hour Advisory Memorandum No. 2006-2 (page 3)

**(PLAINTIFFS APPX 14)** the DOL summarized its interpretation of the FLSA with regard to

the compensability of "non-unique" gear in light of the Supreme Court's decision in <u>Alvarez</u>:

> The Supreme Court in <u>Alvarez</u> did not rule directly on the compensability of donning and doffing of "nonunique" gear such as hairnets, goggles, hard hats and smocks, because it was conceded or the courts below held that donning and doffing of the gear at issue in these cases was a principal activity. The Court, however, framed the issue to be decided as involving walking time after the donning of required gear "that the courts below found integral and indispensible to the employees' work." In <u>Steiner</u>, the Court held that changing into and out of old work clothes at a battery plant was an integral and indispensable part of the workers' principal activities, and therefore compensable. And the regulation at 29 C.F.R. 790.8 n.65 provides that any clothes changing on the employer's premises, which is required by law, the employer or the nature of the work is compensable. [footnote omitted]. The Court in <u>Alvarez</u> ruled that the principles enunciated in <u>Steiner</u> were applicable to the cases before it, and endorsed the Secretary's regulations. Accordingly, whether required gear is "unique" or "non-unique" is irrelevant to whether donning and doffing is a principal activity.

Thus, pursuant to the Supreme Court <u>Alvarez</u> decision, as well as the DOL's 2006 Advisory

Memorandum interpreting the law based on <u>Alvarez</u>, there is no longer a viable distinction

between "unique" and "non-unique" equipment in terms of judging the compensability of

donning and doffing such equipment. The only relevant question is whether the donning and

doffing of equipment (whether unique or non-unique) is integral and indispensable to the

workers' principal work activities.

Here, it is undisputed that Plaintiffs must obtain and don their smock and the rest of their

personal protective equipment on the premises of the Storm Lake plant on a daily basis.

Plaintiffs cannot leave the plant with a smock to don at home and they cannot re-use the prior

day's dirty smock. Accordingly, pursuant to <u>Alvarez</u> and <u>Steiner v. Mitchell</u>, 350 U.S. 247

(1956), since the smock and other PPE must be donned on the premises of the employer prior to

the start of the shift, it is integral and indispensable to the Plaintiffs' principal activities; and the

act of donning the smock is compensable and starts the continuous workday, and the act of

doffing the smock is also compensable and occurs within the course of the continuous workday.

This Court should therefore grant Plaintiffs partial summary judgment on Tyson's affirmative

defense asserting that time spent donning and doffing "standard" safety equipment is not a

compensable work activity.

### B.    Tyson Cannot Rely Upon A De Minimis Defense

In its Answer, Tyson asserts:  "All or part of the claims are barred under the de minimis

doctrine."  (See, Tyson's Answer To Plaintiffs' Complaint **(Doc. 15)** Paragraph 12 of stated

defenses)(**PLAINTIFFS APPX 10**).  Plaintiffs will establish below that Tyson cannot establish

a de minimis defense as a matter of law.

The Supreme Court has previously recognized that employers do not need to pay

employees for otherwise compensable time if that time is "de minimis."  Anderson v. Mt.

Clemens Pottery Co., 328 U.S. 680, 692 (1946)("When the matter at issue concerns only a few

seconds or minutes of work beyond the scheduled working hours, such trifles may be

disregarded.")  Pursuant to the DOL's implementing regulation, the narrow "de minimis"

exception "applies only where there are uncertain and indefinite periods of time involved of a

few seconds or minutes duration, and where failure to count such time is due to considerations

justified by industrial realities." 29 C.F.R. 785.47 (emphasis added).  If it is feasible for the

employer to record the time, then the employer cannot escape liability for paying its employees

for this time by relying on the de minimis rule.  See Id. ("An employer may not arbitrarily fail to

count as hours worked any part, however small, of the employee's fixed or regular working time

or practically ascertainable period of time he is regularly required to spend on duties assigned to

him.").

14

Courts generally weigh three factors in determining whether a claim is too small for recovery and de minimis: (1) the practical administrative difficulty in recording the time, (2) the size of the aggregate claim, and (3) the regularity of the additional work.  Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984).  None of these factors provide any support whatsoever to Tyson's claimed de minimis defense.

There is no practical administrative difficulty at all in capturing the time Plaintiffs spend donning, doffing and washing/sanitizing their personal protective equipment, and Tyson's management employees have essentially admitted this.  It is undisputed that Tyson has time clocks throughout the Storm Lake plant where all hourly workers are required to swipe a card that records the time Tyson employees clock in and out each day for attendance purposes.

A basic principle under the FLSA is that employers are responsible for the recording of work time.  As the Supreme Court observed in Mt. Clemens, "it is the employer who has the duty under § 11 of the Act [29 U.S.C. § 211(c)] to keep proper records of wages, hours and other conditions and practices of employment." 328 U.S. at 687.  Accordingly, the employer must structure its operations in a manner that permits the accurate recording of this time.  Here, Tyson's failure to accurately record the time the Plaintiffs spend donning, doffing, washing, sanitizing and performing preparatory activities is inexcusable given that Tyson could have moved its time clocks to a position near its locker rooms where the first and last compensable work activities are performed.  Because Defendant Tyson has time clocks with the ability to record all time (to the minute), it is administratively feasible for Tyson to record the time its employees spend on the donning and doffing (and related) activities in dispute in this case.[4]

---

[4] It appears from a document produced by Defendant Tyson in this case, that Tyson has at least contemplated moving some of the time clocks close to the locker rooms for the purpose paying production workers "on the clock" for doffing and washing activities at the end of shift such that

Therefore, Tyson cannot rely on the de minimis defense to avoid paying for these compensable work activities.

The size of the aggregate claim factor also weighs heavily in favor of Plaintiffs and against permitting Tyson to assert a de minimis defense. As the Lindow second factor makes clear, the de minimis defense does not apply separately to each particular activity viewed in isolation. A de minimis determination instead requires consideration of the aggregate amount of time for which an employee seeks compensation. See, Alvarez, 546 U.S. at 39; Lindow, 738 F.2d at 1063;  see also, DOL Wage Hour Advisory Memorandum, 2006-2, at p. 3.  (**PLAINTIFFS APPX 14**).

Here, the size of Plaintiffs' aggregate claim is enormous since it involves work activities that are performed every single work day, before and after every shift, for over 500 Plaintiffs who have opted in to the case, for a time period going back as far as March of 2004.  Plaintiffs' aggregate claims for uncompensated time cannot be considered de minimis under any definition of that term.

Moreover, the time Plaintiffs spend donning and doffing cannot be deemed de minimis because these activities occur regularly each work day.  The de minimis rule does not apply where the activities at issue are regular, recurring events that employees perform each and every day.  See Kosakow v. New Rochelle Radiology Associates, P.C., 274 F.3d 706, 719 (2d Cir. 2001)(no de minimis defense where employee needed to arrive 15 minutes early each day).  Thus, Tyson's de minimis defense fails on this ground as well, and this Court should therefore

---

they would punch out after those activities and Tyson would pay to the punch out time.  (**Tyson Documents Bates No. TSE00194713-14)(PLAINTIFFS APPX 75-76)**.   However, to date, Tyson has not implemented this contemplated change.  Nonetheless, this contemplated change also supports Plaintiffs' argument that Tyson does have the ability to administratively capture this time if it made some minor changes to the locations of the punch clocks at the plant.

grant Plaintiffs partial summary judgment on Tyson's "<u>de minimis</u>" defense and hold that this doctrine does not excuse Tyson's non-compliance with the Fair Labor Standards Act.

### C.    Tyson Cannot Establish A "Good Faith" Defense Pursuant To 29 U.S.C. § 259.

Defendant Tyson asserts in its Answer: "The plaintiffs and other proposed class members are not entitled to any recovery because any alleged facts or omissions were made by defendants in good faith conformity with and reliance upon applicable administrative regulation, order, ruling, approval or interpretation, or administrative practice or enforcement policy with respect to the class of employers to which defendant belongs." (See, Tyson's Answer To Plaintiffs' Complaint **(Doc. 15)** Paragraph 8 of its stated defenses) **(PLAINTIFFS APPX 9)**.

Under 29 U.S.C. § 259(a), employers may establish a "good faith" defense to liability for violations of the FLSA if they plead and prove that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in [Section 259](b).[5] <u>Hultgren v. County of Lancaster</u>, 913 F.2d 498 (8th Cir. 1990).  The Ninth Circuit summarized the employer's burden of proof as: "To be insulated from liability under § 259's good faith exception, an employer must show it acted (1) in good faith, (2) conformity with, and (3) reliance on the DOL's regulations or the Administrator's Opinion Letter." <u>Alvarez v. IBP, Inc.</u>, 339 F.2d 894, 907 (9th Cir. 2003).  "The employer bears the burden of proof to establish [the § 259(a)] exception." <u>Alvarez,</u> 339 F.3d  at 907.

Under the good faith reliance defense, Defendant Tyson's "burden is a heavy one," <u>Luna-Guerrero v. The North Carolina Growers Ass'n, Inc.</u>, 370 F. Supp. 2d 386, 391 (E.D.N.C. 2005).

---

[5] In the case of the FLSA, subdivision (b) provides that the "agency" is "the Administrator of the Wage and Hour Division of the Department of Labor."  <u>Hultgren</u>, 913 F.2d at 507.

At the summary judgment stage, the good faith reliance defense will fail if issues of material fact exist concerning Defendant's good faith or actual reliance on the administrative ruling. See, Bayles v. American Med. Response, 937 F. Supp. 1477, 1489 (D. Colo. 1996).

As discussed below, Defendant cannot satisfy its heavy burden of proving any of the three requirements of the good faith reliance defense.

### 1.   Defendant Tyson Cannot Prove Actual Reliance

The good faith reliance defense applies only if Tyson "actually relied upon" an administrative ruling of the DOL. See 29 C.F.R. § 790.16(a); Luna-Guerrero, 370 F. Supp. 2d at 391. Indeed, "the purpose of [the defense] was to provide a defense for an employer who pleads and proves, among other things, that his failure to bring himself under the [FLSA] 'grew out of reliance upon' the ruling of an agency." 29 C.F.R. § 790.16(a) n. 101. Section 259's legislative history indicates Congress intended the defense to apply where employers innocently, and to their detriment, follow the law as interpreted by a government agency, without notice that the agency's interpretation was invalid or in error. Hultgren, 913 F.2d at 507. The defense is essentially an estoppel defense to protect employers from an agency's mistakes in statutory interpretation. Id.

Here, the record at the close of discovery provides no evidence at all that Tyson's donning and doffing payment policies - - of not recording time spent on donning and doffing activities and not paying workers "actual" time spent performing these activities, but rather paying employees a certain number of minutes per day (a range of 4-8 minutes per day) based on whether they use a knife and what PPE they wear - - are based upon any "reliance on any written administrative regulation, order, ruling, approval, or interpretation", of the DOL Wage and Hour Administrator. To the contrary, Tyson's corporate representatives testified that its policy of

paying 4-8 minutes per day to knife users and those who wear PPE stems from its own unilateral response to the 2005 Supreme Court decision in IBP v. Alvarez (See, **Will Sager 2008 Deposition at p. 68-70) (PLAINTIFFS APPX 72-74)** as well as a 1998 time study of putting on and taking off equipment in connection with a 2006 "walking time" study, both of which Tyson self-performed with its own industrial engineering department (with no participation of the DOL). **Jim Lemkuhl Deposition p. 28-34 (PLAINTIFFS APPX 16-24)**

### 2.  Defendant Cannot Prove Good Faith

Under the defense, "good faith" requires that the employer have "no knowledge of circumstances which ought to put him upon inquiry." 29 CFR 790.15(a). When legal developments "cast doubt on the correctness" of DOL opinions or rulings, the defense is lost. Id. at 790.15(b). Good faith is lacking "where an employer had knowledge of conflicting rules and chose to act in accordance with the one most favorable to him." Id. at 790.15(d) n. 99; see Alvarez, 339 F.3d at 907 (citing Keeley, 183 F.3d at 271); EEOC v. Home Ins. Co., 672 F.2d 252, 265 (2d Cir. 1982); Mascol v. E&L Transp., Inc., 387 F. Supp. 2d 87, 100 (E.D.N.Y. 2005). Moreover, as observed by the Third Circuit, "good faith is absent when the employer fails to investigate a law's requirements, or simply relies on a longstanding practice (of either the employer itself or its industry) of failing to pay overtime or on union acquiescence in such failure." Keeley v. Loomis Fargo Co., 183 F.3d 257, 271 (3d Cir. 1999).

At the very least, the Supreme Court's decision in Alvarez in October of 2005 should have put Tyson in a position to seek guidance from the Department of Labor Wage and Hour Division about its payment practices. Instead, in response to Alvarez, Tyson ignored this process of seeking guidance from the DOL and unilaterally conducted its own carefully orchestrated time

study, which actually excluded from consideration many compensable work tasks such as

waiting time during the continuous work day.  Accordingly, Tyson cannot establish good faith.

### 3.   Defendant Cannot Prove Conformity

As far back as January 15, 2001, the DOL informed meat packing companies that they

were not permitted to pay workers for donning and doffing activities based upon an "average"

amount of time.  Instead, DOL mandated that meat packing companies must pay all individual

employees for the <u>actual</u> time they spend performing donning and doffing activities.

Specifically, the DOL stated in its January 15, 2001 Advisory Memorandum (page 2)

> Also, a number of meatpacking companies have asked the Department if it would
> be permissible to pay employees wages based on an average amount of time that
> all employees work.  I would like to reiterate that in order to comply with the
> FLSA and its implementing regulations (see 29 C.F.R. 516.2), **a company must
> record and pay for each employee's actual hours of work, including
> compensable time spent putting on, taking off and cleaning his or her
> protective equipment, clothing or gear.**

(emphasis added) (**PLAINTIFFS APPX 25-26**).

Accordingly, Tyson's practice of paying workers an "average" time for donning and

doffing activities is not in conformity with DOL's interpretation of the FLSA.  Moreover, Tyson

cannot point to any DOL opinion letter, regulation or interpretation, which provides approval for

Tyson's "average time" payment scheme.

Summarily, Tyson cannot establish any of the three elements necessary to establish a

"good faith" defense under 29 U.S.C. § 259.  Therefore, this Court should therefore grant

Plaintiffs partial summary judgment on Tyson's good faith defense (Paragraph 8 of its listed

defenses in its Answer) (**PLAINTIFFS APPX 9**) asserting that its actions were taken in good

faith within the meaning of 29 U.S.C. § 259.

**D.  Tyson Cannot Establish A Portal-to-Portal Defense Pursuant To 29 U.S.C. § 254(a) Because The Supreme Court Has Already Ruled In <u>Alvarez</u> That Donning And Doffing Of Required Protective Equipment Is Integral And Indispensible To The Principal Activity Of Meat Processing And Is Therefore Itself A Principal Activity.**

Defendant Tyson asserts in its Answer: "All or part of the time for which plaintiffs seek compensation is noncompensable under the Portal-to-Portal Act, 29 U.S.C. § 254." (See, Tyson's Answer To Plaintiffs' Complaint **(Doc. 15)** Paragraph 13 of its stated defenses) **(PLAINTIFFS APPX 10).**

. This defense is easily dispensed with just by looking at the discussion of the Portal-to-Portal Act within the Supreme Court's decision in <u>Alvarez</u>.  The <u>Alvarez</u> decision contains a lengthy discussion of the Portal-to-Portal Act generally, and of 29 U.S.C. §254(a)'s exception for activities which are "preliminary" or "postliminary" to a principal work activity.  <u>See</u>, 546 U.S. at 26-33.  Specifically, the unanimous Supreme Court in <u>Alvarez</u> reiterated its long-held view that any activity that is integral and indispensable to a principal activity is itself a principal activity, and therefore, compensable under the FLSA.  <u>Alvarez</u>, 546 U.S. at 37.  As applied to the meat processing industry, the Supreme Court specifically held that the donning and doffing of required sanitary and safety equipment is integral and indispensable to meat processing workers' principal work activities, and that such activities were compensable and commenced and concluded the continuous workday.  <u>Alvarez</u>, 546 U.S. at 32-33.

The Supreme Court's decision in <u>Alvarez</u> is controlling on this question, and Tyson cannot present any evidence that would distinguish <u>Alvarez</u>.  It is undisputed that Tyson production workers at Storm Lake must obtain and don all of their personal protective equipment on site at the plant prior to entering the production floor and performing any meat processing activities.  Many of the items of PPE are laundered by Tyson after shift and put in a laundry bag

21

clean and hung in the lockers of the production employees. **Sager 2008 Deposition p. 19**. **(PLAINTIFFS APPX 55)**. The remaining items that are not laundered are kept in the employee's locker between shifts. Such items would include (if the employee is required to use them) the plastic arm guard, the mesh apron, the knives, the scabbard, hard hats, ear plugs, mesh sleeves. **Sager 2008 Deposition p. 20-21. (PLAINTIFFS APPX 56-57)**. Employees are not permitted to take their items of PPE home, they must leave them in their locker between shifts. **Sager 2008 Deposition p. 22. (PLAINTIFFS APPX 58)**

Accordingly, based on <u>Alvarez</u>, this Court should conclude that the donning and doffing of protective equipment at Tyson's Storm Lake plant is a "principal activity" in the meat processing job and, therefore, time spent on these activities is compensable pursuant to the FLSA. As a result, this Court should, therefore, grant Plaintiffs partial summary judgment on Tyson's defense (Paragraph 13 of its stated defenses) **(PLAINTIFFS APPX 10)** asserting that Plaintiffs' donning and doffing work activities are not compensable pursuant to the Portal-to-Portal Act, 29 U.S.C. § 254(a), because they are "preliminary" or "postliminary" to a principal activity.

**E.    Tyson Cannot Establish A Good Faith Defense To Plaintiffs' Claims For Liquidated Damages Pursuant To 29 U.S.C. § 260.**

Defendant Tyson asserts in its Answer: "The plaintiffs and other proposed class members are not entitled to recover liquidated damages or penalties because defendant at all times acted in good faith and with reasonable grounds for believing that it had not violated the FLSA or the Iowa Wage Payment Collection Act." (See, Tyson's Answer To Plaintiffs' Complaint **(Doc. 15)** Paragraph 7 of its stated defenses) **(PLAINTIFFS APPX 9)**.

Under the FLSA, an employer in violation of the statute "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime

compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, a court "in its sound discretion" may reduce the amount of liquidated damages if an employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of [FLSA]." 29 U.S.C. § 260.

To demonstrate that a good faith reduction in liquidated damages is appropriate, an employer must demonstrate that the violation was "both in good faith and predicated upon such reasonable grounds that it would be unfair to impose [liquidated damages]. Elwell v. Univ. Hosp. Care Service, 276 F.3d 832, 840 (6th Cir. 2002). This burden is "substantial," and unless an employer carries this burden, a district court lacks power or discretion to reduce liquidated damages for an employer found liable for violating FLSA. Id.

The notion that Tyson Foods/Fresh Meats of all meatpacking companies is claiming "good faith" compliance with the Fair Labor Standards Act borders on laughable. As the predecessor to IBP, Tyson Foods litigated the Alvarez case all the way to the United Supreme Court. And lost. The Supreme Court's ruling in Alvarez occurred in 2005, long before this lawsuit was filed. In response to losing the Alvarez case, Tyson made minimal if any changes to the way that it paid its workers for donning, doffing and washing their personal protective equipment. As a result, there are multiple lawsuits filed against Tyson regarding both their chicken and fresh meat operations that are too numerous to list here. There are four lawsuits just before this Court (including this one) claiming the same violations of the FLSA that were claimed in Alvarez.

The Jordan v. IBP, Inc. decision in the Middle District of Tennessee, cited previously, aptly describes IBP's/Tyson's checkered past in terms of failure to comply with the Fair Labor Standards Act:

> This case represents yet another chapter in a long history of litigations that span multiple for a, all of which involve one or both of the defendants here [IBP and Tyson Foods] and the question of whether their compensation practices violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq. These defendants, individually or collectively, have now been litigating this same issue for decades, reflecting what can only be described as a deeply-entrenched resistance to changing their compensation practices to comply with the requirements of the FLSA. Most notably, beginning in 1988, the Department of Labor brought suit against IBP in the U.S. District Court for the District of Kansas (the "DoL Litigation"), which culminated in the issuance, in July 1996, of a company-wide permanent injunction requiring IBP to comply with the overtime and record keeping provisions of the FLSA. See Garcia v. Tyson Foods, Inc., 474 F.Supp.2d 1240, 1242-43 (D. Kan. 2007)(discussing history of DoL Litigation).

See, Jordan v. IBP Inc., 542 F.Supp. 2d 790, at 794.

Tyson's litigation history, both in its own right and as the predecessor to IBP, shows blatant non-compliance with the FLSA and DOL's attempts to enforce the FLSA. The Court should reject Tyson's brazen attempt to claim innocent "good faith" compliance with the FLSA.

## V.   CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully requests that this Court grant partial summary judgment in favor of Plaintiffs upon the stated defenses raised in Paragraphs 7, 8, 11, 12, and 13 of Defendant Tyson's March 28, 2007 Answer to Plaintiffs' Complaint (**Doc. 15**) (**PLAINTIFFS APPX 9-10**).

Respectfully submitted,

/s/ Brian P. McCafferty

BRIAN P. MCCAFFERTY

24

Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327 (phone)
(610) 940-0284 (fax)
cafstar@aol.com

MICHAEL HAMILTON
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road, Suite 300
Nashville, TN 37215
Phone:  (615) 242-0199
Facsimile:  (615) 256-5922
E-mail:  mhamilton@provostumphrey.com

ROGER K. DOOLITTLE
460 Briarwood Drive, Suite 500
Jackson, MS 39206
Phone:  (601) 957-9777
Facsimile:  (601) 957-9779
E-mail:  rogerkdoolittle@aol.com


Attorneys for Plaintiffs

Dated:  July 1, 2010

## CERTIFICATE OF SERVICE

I, Brian P. McCafferty, hereby certify that on July 1, 2010, I electronically filed the foregoing Plaintiffs' Memorandum Of Law In Support Of Their Motion For Partial Summary Judgment with the Clerk of Court using the CM/ECF system which sent notification of such to the following counsel for Defendant Tyson pursuant to the ECF System:

> Heidi Guttau-Fox, Esq.
> Michael J. Mueller, Esq.
> Alison D. Balus, Esq.
> Evangeline Paschal, Esq.

and I hereby certify that I have mailed by United States Postal Service, postage prepaid, this document to the following non CM/ECF participants:

> None.

/s/ Brian P. McCafferty

Brian P. McCafferty

Dated:  July 1, 2010