THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION – SIOUX CITY

| | | |
|---|---|---|
| PEG BOUAPHAKEO et al., individually And on Behalf of Themselves and All Other Similarly Situated Individuals, | ) ) ) ) | No. 5:07-cv-04009 JAJ |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| TYSON FOODS, INC. | ) ) | PLAINTIFFS' AMENDED PROPOSED JURY |
| Defendant | ) ) | PROPOSED JURY INSTRUCTIONS |

PLAINTIFFS submit the following amended proposed jury instructions.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION – SIOUX CITY

| | | |
|---|---|---|
| PEG BOUAPHAKEO et al., individually And on Behalf of Themselves and All Other Similarly Situated Individuals, | ) ) ) | No. 5:07-cv-04009 JAJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC. | ) ) | PLAINTIFFS' AMENDED PROPOSED JURY |
| Defendant | ) | INSTRUCTIONS |

## TABLE OF CONTENTS

PRELIMINARY INSTRUCTIONS

1. General:  Nature Of Case (Plaintiffs)
2. Evidence (Unopposed)
3. Bench Conferences And Recesses (Unopposed)
4. No Transcript Available (Unopposed)
5. Conduct Of The Jury (Unopposed)
6. Outline Of Trial (Unopposed)

FINAL INSTRUCTIONS

7. Explanatory (Unopposed)
8. Judge's Opinion (Unopposed)
9. Burden Of Proof (Unopposed)
10. Credibility Of Witnesses (Unopposed)
11. Stipulated Facts (Unopposed)
12. Interrogatories (Unopposed)
13. Expert Opinion Evidence (Unopposed)
14. Companies/Corporations And Agency (Plaintiffs)
15. The Fair Labor Standards Act (Plaintiffs)
16. FLSA Elements (Plaintiffs)
17.(a) Compensability Of  Activities Already Determined To Be Compensable (Plaintiffs)
17(b) Compensability Of Activities Not Already Determined To Be Compensable (Plaintiffs)

18.  Plaintiffs' Claim For Violation Of The Iowa Wage Payment Collection Law,  Iowa Code 91.a.1, et seq. (Failure to Pay All Wages Due To Its Employees (Plaintiffs)
19. FLSA—"Work" Definition (Plaintiffs)
20. FLSA—Suffer or Permit (Plaintiffs)
21. FLSA—Determining Hours Worked (Plaintiffs
22. Integral And Indispensable (Plaintiffs)
23. FLSA – Continuous Workday (Plaintiffs)
24. Walking Time (Plaintiffs)

25.  De Minimis Defense (Plaintiffs)
26.  FLSA—Waiting Time (Plaintiffs)
27.  Representative Evidence (Plaintiffs)
28. Damages (Plaintiffs)
29. FLSA – Waiver Prohibited (Plaintiffs)
30. Election Of Forepersons; Duty To Deliberate; Communications With Court; Cautionary; Unanimous Verdict  (Unopposed)

# 1. GENERAL: NATURE OF CASE (PLAINTIFFS)

Ladies and Gentlemen: I will take a few minutes now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions – both those I give you now and those I give you later – are equally binding on you and must be followed.

This is a civil class and collective action case brought by the Plaintiffs and those similarly situated against Defendant, Tyson Foods, Inc.

A class and collective action is a lawsuit brought by one or more Plaintiffs on behalf of a large group of others who have a common legal claim. The Plaintiffs allege that Tyson failed to pay them for all of the time they spent working at the Defendant's meat processing facility in Storm Lake, Iowa. The Court has found that the Plaintiffs, also referred to as the Class Representatives, will adequately represent all Class members and that their claims are common and typical of all Class members.

Specifically, Plaintiffs allege that Tyson requires its production and support workers at its Storm Lake meat-processing plant to perform substantial amounts of work while "off-the-clock." This work includes putting on and taking off work-related protective and sanitary equipment and gear, washing and sanitizing workers' equipment and themselves, sharpening knives, and the walking and waiting time that is required in performing these work activities. The Plaintiffs allege that Tyson requires its workers to perform these work duties after they get to work, but before their scheduled shifts, after their scheduled shifts, and during their lunch periods. The law requires that Tyson pay its hourly employees for all hours worked between their first principal activity of the day

and their last principal activity of the day, except for *bona fide* lunch periods, and Plaintiffs allege that Tyson has not followed this law. Tyson denies Plaintiffs' allegations and asserts that it has adequately paid all wages owed to Plaintiffs and the Class.

From the evidence you will decide what the facts are. You are entitled to consider the evidence in the light of your own observations and experiences in the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

You should not take anything I may say or do during the trial as indicating what I think of the evidence or what I think your verdict should be.[1]

---

[1] 8th CIR. CIVIL JURY INSTR.§1.01 (2008 as modified)

## 2. EVIDENCE (UNOPPOSED)

I have mentioned the word "evidence." "Evidence" includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated – that is facts which I say you must accept as true.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions and comments by lawyers are not evidence.

2. Exhibits that are identified by a party but not offered or received in evidence are not evidence.

3. Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe something is improper. You should not be influenced by the objections. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.

4. Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence and must not be considered.

5. Anything you see or hear about this case outside the courtroom is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.[2]

---

[2] 8th CIR. CIVIL JURY INSTR. §1.02 (2008)

### 3. BENCH CONFERENCES AND RECESSES (UNOPPOSED)

During the trial it may be necessary for me to speak with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.[3]

---

[3] 8TH CIR. CIVIL JURY INSTR. §1.03 (2008)

## 4.  NO TRANSCRIPT AVAILABLE (UNOPPOSED)

At the end of the trial you must make your decision based on what you recall of the evidence.  You will not have a written transcript to consult.  You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said.  If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case.  And do not let note-taking distract you so that you do not hear other answers by the witness.

When you leave at night, your notes will be secured and not read by anyone.[4]

---

[4] 8TH CIR. CIVIL INSTR. §1.04 (2008)

## 5.  CONDUCT OF THE JURY ( UNOPPOSED)

To insure fairness, you as jurors must obey the following rules:

*First,* do not talk among  yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide on your verdict.

*Second,* do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

*Third*, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it, until the trial has ended and your verdict has been accepted by me.  If someone should try to talk to you about the case during the trial, please report it to the deputy clerk or other court personnel.

*Fourth,* during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case.   You should not even pass the time of day with any of them.  It is important not only that you do justice in this case, but that you also give the appearance of doing justice.  If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness must be aroused.  If any lawyer, party or witness does not speak to you when you pass in the hall, ride the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

*Fifth,* do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio, television or Internet reports about the case or about anyone involved with it.  In fact, until the trial is over I suggest that you avoid reading any newspapers or news journals and listening to any television, radio or Internet newscasts.  I do not know whether there might be any news reports of this case, but if

there are you might inadvertently find yourself reading or listening to something before you could do anything about it.  If you want, you can have your spouse or a friend clip out any stories and set them aside to give you after the trial is over.  I can assure you, however, that by the time you have heard  the evidence in this case, you will know what you need to decide it.

*Sixth*, do not do any research or make any investigation on your own about any matter involved in this case.  By way of examples, that means you must not consult a dictionary, textbook or encyclopedia, go to the Internet or consult any other source for information about some issue or person in this case.  You must learn about the case from the evidence you receive here at the trial and apply it to the law as I give it to you.

*Seventh*, cell phones are not permitted in the jury room during deliberation.

*Eighth,* do not make up your mind during the trial about what the verdict should be.  Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.[5]

---

[5] 8TH CIR. CIVIL JURY INSTR. §1.05 (2008)

**6.  OUTLINE OF TRIAL (UNOPPOSED)**

The trial will proceed in the following manner:

First, the Plaintiffs' attorney may make an opening statement.  Next, the Defendant's attorney may make an opening statement.  An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

The Plaintiffs, will then present evidence and counsel for the Defendants may cross-examine.

Defendant may then present evidence and counsel for Plaintiff may cross-examine.

After the presentation of evidence is completed, the attorneys will make their closing arguments to summarize and interpret the evidence for you.  As with opening statements, closing arguments are not evidence.  The court will instruct you further on the law.  After that you will retire to deliberate on your verdict.[6]

---

[6] 8TH CIR. CIVIL JURY INSTR. §1.06 (2008)

## 7. EXPLANATORY (UNOPPOSED)

Members of the jury, the instructions I gave at the beginning of the trial and during the trial remain in effect. I now give you some additional instructions.

You must, of course, continue to follow the instructions I gave you earlier, as well as those I give you now. You must not single out some instructions and ignore others, because *all* are important. This is true even though some of those I gave you at the beginning of and during trial are not repeated here.

The instructions I am about to give you now are in writing and will be available to you in the jury room. I emphasize, however, that this does not mean they are more important than my earlier instructions. Again, *all* instructions, whenever given and whether in writing or not, must be followed.[7]

---

[7] 8TH CIR. CIVIL JURY INSTR. §3.01 (2008)

**8. JUDGE'S OPINION (UNOPPOSED)**

Neither in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give you any opinion or suggestion as to what your verdict should be.

During this trial I have occasionally asked questions of witnesses. Do not assume that because I asked questions I hold any opinion on the matters to which my questions related.[8]

---

[8] 8TH CIR. CIVIL JURY INSTR. §3.02 (2008)

## 9. BURDEN OF PROOF (UNOPPOSED)

In these instructions you are told that your verdict depends on whether you find certain facts have been proved. The burden of proving a fact is upon the party whose claim or defense depends upon that fact. The party who has the burden of proving a fact must prove it by the preponderance of the evidence. To prove something by the preponderance of the evidence is to prove that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved.

The preponderance of the evidence is not necessarily determined by the greater number of witnesses or exhibits a party has presented.

You may have heard the term "proof beyond a reasonable doubt." This is a stricter standard which applies in criminal cases. It does not apply in civil cases such as this. You should, therefore, put it out of your minds.

In deciding whether any fact is more likely true than not true, you may consider the testimony of all the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.[9]

---

[9] 8TH CIR. CIVIL JURY INSTR. §3.04 (2008); *Solis v. Tyson Foods, Inc.,* No. 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (jury instructions in donning and doffing case brought by United States Dept. of Labor).

## 10.  CREDIBILITY OF WITNESSES (UNOPPOSED)

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe.  You may believe all of what a witness said, or only part of it, or none of it.

In deciding what testimony to believe, you may consider a witness' intelligence, the opportunity a witness had to see or hear the things testified about, a witness' memory, any motives a witness may have for testifying a certain way, the manner of a witness while testifying, whether a witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things.  You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or only a small detail.[10]

---

[10] 8TH CIR. CIVIL INSTR. §3.03 (2008)

FINAL INSTRUCTION

## 11.  STIPULATED FACTS (UNOPPOSED)

The Plaintiffs and the Defendants have stipulated – that is, they have agreed – that certain facts are as counsel have just stated.  You should, therefore, treat those facts as having been proved.[11]

---

[11] 8TH CIR. CIVIL JURY INSTR. §2.03 (2008)

## 12.  INTERROGATORIES (UNOPPOSED)

During the trial, you have heard the word "interrogatory."  An interrogatory is a written question asked by one party or another, who must answer it under oath in writing. Consider interrogatories and the answers to them as if the question had been asked and answered here in Court.[12]

---

[12] Iowa Civil Jury Instruction 100.6

**13. EXPERT OPINION EVIDENCE (UNOPPOSED)**

You have heard testimony from persons described as experts.  Persons who have become experts in a field because of their education and experience may give their opinion on matters in that field and the reasons for their opinion.

Consider expert testimony just like any other testimony.  You may accept it or reject it.  You may give it as much weight as you think it deserves, consider the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.[13]

---

[13] Iowa Civil Jury Instruction 100.12

## 14. COMPANIES/CORPORATIONS AND AGENCY (PLAINTIFFS)

The fact that a company or corporation is involved as a party in this case must not affect your decision in any way. A company or corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a company or corporation is involved, of course, it may act only through people as its employees; and, in general, a company or corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

A company or corporation acts only through its agents or employees and any agent or employee of a company or corporation may bind the company or corporation by acts and statements made while acting within the scope of the authority delegated to the agent by the corporation, or within the scope of his or her duties as an employee of the company or corporation.[14]

---

[14] 8TH CIRC. CIVIL JURY INSTR. §9.01 (2008) *Solis v. Tyson Foods, Inc.* No. 2:02-cv-001174-VEH (N.D. Ala Oct. 14, 2009) (jury instructions in donning and doffing case brought by United States Dept. of Labor)

## 15. THE FAIR LABOR STANDARDS ACT (PLAINTIFFS)

The federal Fair Labor Standards Act (the "FLSA") is a federal statute that governs the failure to pay overtime compensation. Generally, under the FLSA employers must pay hourly employees 1 ½ times their regular rate of pay for all hours worked in excess of forty in one week.[15]

---

[15] *See* 8TH CIR. CIVIL PROPOSED JURY INSTR. P. 75 (2010); 29 U.S.C. §291 et seq, The FLSA is a remedial statute that was enacted to eliminate "the existence… of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." Id. §202(a); 206, 207.

## 16. FLSA ELEMENTS (PLAINTIFFS)

Your verdict must be for Plaintiffs and against Defendants on Plaintiffs' FLSA claim if all of the following elements have been proved to be more likely true than not true:

First, Plaintiffs were employed by Defendant on or after March 31, 2004.

Second, Plaintiffs were employed by an enterprise engaged in commerce or the production of goods for commerce that had annual gross sales of at least $500,000 to which the parties have stipulated; and

Third, Defendant failed to pay Plaintiffs overtime pay for all hours worked by Plaintiffs in excess of 40 in one or more work weeks.[16]

---

[16] 8TH CIR. CIVIL PROPOSED JURY INSTR. P. 79 (2010) (as modified); *Solis v. Tyson Foods, Inc.,* No. 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (jury instructions in donning and doffing case brought by the United States Dept. of Labor)

**17. a. COMPENSABILITY OF ACTIVITIES ALREADY DETERMINED TO BE COMPENSABLE (PLAINTIFFS)**

The parties have stipulated that wages must be paid for donning and doffing activities of employees who use some combination of the following equipment intended to protect against knife-related injuries:  a mesh apron, mesh gloves, mesh sleeves, polar glove, polar sleeves, plexiglass arm guard, membrane skinner gloves, steel and scabbard. The foregoing activities are called knife-related donning and doffing  activities in these instructions.

You, as the jury, must accept that knife-related donning and doffing activities have already been determined to be (a) "work;" (b) a "principal activity" or "integral and indispensable" to a principal activity that starts the "continuous work day" for which wages must be paid; and (c) not too small, insignificant or de minimis to permit wages to be paid for the time necessary to perform such activities.[17]  The only issue for you to decide regarding these knife-related donning and doffing activities is the amount of time it takes to perform such activities and whether the defendant has paid the proper amount of wages or overtime for those activities.

Because knife-related donning and doffing activities start the "continuous work day", you must also accept and be bound by the fact that wages must be paid for all other activities which occur between the first knife-related  donning and doffing  activity at the start of the shift and the last such knife-related donning and doffing  activity at the end of the shift, including :  (1) donning and doffing other knife-related items; (2) walking from

---

[17] Order For Final Pretrial Conference, Stipulation of Facts 16, 25.

the lockers where such knife-related items are obtained or donned to the production line at the start of the shift; (3) washing and  sanitizing such knife-related items or the employees' hands or gloves; (4) waiting for production to begin on the production line; (5) walking from the production line to the locker room or other areas where such knife-related items are stored, hung or deposited at the end of the shift or during the unpaid portion of the breaks; (6) donning, doffing, washing or sanitizing such knife-related items during the unpaid portion of breaks; (7) walking back to the production line during the unpaid portion of breaks after gathering or donning, washing or sanitizing such knife-related items or the employees hands or gloves; and (8) donning, doffing, washing or sanitizing other non knife-related sanitary or protective gear or equipment that is either obtained, donned, doffed, washed or sanitized after the first knife-related donning and doffing activity of the shift and before the last such knife-related donning and doffing activity at the end of the shift.

Wages must be paid for all such activities because they occurred during the "continuous work day" which begins with the first "principal activity" or activity that is "integral and indispensable to the principal activity.

If you determine that the first such activity each day is one of the parties' knife-related donning and doffing activities set forth above, then you must return a verdict for the plaintiff for all times spent after such knife-related donning and doffing  activity at the start of the shift until the last such activity at the end of the shift.[18]

---

[18] *Alvarez v. IBP, Inc.*, 546 U.S. 21 (2005); *Alvarez v. IBP, Inc.*, 339 F.3rd 894 (9th Cir. 2103); *DOL Wage and Hour Advisory Memoranda*, No. 2006-2, May 31, 2006.

FINAL INSTRUCTION

## 17(b).  COMPENSABILITY OF ACTIVITIES NOT ALREADY DETERMINED TO BE COMPENSABLE (PLAINTIFFS)

The Parties have stipulated that all hourly production  workers are required to wear a hard hat, a hair net, a beard net (if they have facial hair), and ear plugs or ear muffs while on the production floor.   Workers in the Cut and Retrim Processing Areas are required to wear a fabric frock provided by Tyson over their street clothes while on the production floor.  Workers in the Kill Area are required to wear a fabric white shirt and pants ("whites") provided by Tyson, except workers may choose to wear their own light-colored shirt and pants instead of the Tyson-issued.  Non-knife using employees may also don and doff rubber gloves, cotton gloves and rubber or plastic aprons.  Collectively, the company-issued frock, whites, cotton gloves, rubber gloves, rubber or plastic aprons, hair net, beard net, and ear plugs, are called non knife-related activities in this instruction.[19]

Wages must be paid for all non knife-related donning and doffing activities that occur during the "continuous work day" which is defined as the time between the first compensable activity at the beginning of a shift and the last compensable activity at the end of the shift.  This means that wages must be paid for all non knife-related donning and doffing activities that occur: (a) after one or more of the knife-related items or activities or (b) after one or more of the previously described non knife-related donning and doffing activities are determined to be compensable and therefore starts the continuous work day for which wages must be paid.

---

[19] Order For Final Pretrial Conference, Stipulated Facts 19-22.

You may find that one or more of the non knife-related donning and doffing activities started the continuous workday earlier than the first knife-related donning and doffing activity. To make this determination, you must find that one or more of the following non knife-related activities was a "principal activity" or "integral and indispensable" activity: (1) donning and doffing the company issued frock, whites, cotton gloves, rubber gloves, plastic or rubber apron, hair net, beard net (if applicable) and ear plugs at the start or end or a shift and during the unpaid portion of the breaks; (2) washing or sanitizing one or more of such non knife-related items at the start or end of the shift or during the unpaid portions of the breaks; (3) walking from the locker room where such donning of non knife-related items occurs to the production line at the start of the shift or on return from breaks; (4) waiting for the production line to begin at the start of the shift or during unpaid breaks; (5) walking from the production line to the locker room or other area where one or more such non knife-related items are doffed, hung or stored at the end of the shift or during the unpaid portion of the breaks. [20]

---

[20] *DOL Wage and Hour Advisory Memoranda,* No. 2006-2, May 31, 2006; *Alvarez v. IBP, Inc.,* 546 U.S. 21 (2005); *DeAscencio v. Tyson Foods, Inc.,*500 F.3rd 361 (3rd Cir. 2007).

**18.     PLAINTIFFS' CLAIM FOR VIOLATION OF THE IOWA WAGE PAYMENT COLLECTION LAW, IOWA CODE 91a.1, ET SEQ (FAILURE TO PAY ALL WAGES DUE TO ITS EMPLOYEES). (PLAINTIFFS)**

The Iowa Wage Payment Collection Act is an Iowa State Law that requires employers to pay all wages due to its employees.  Iowa Code §91.A.3.  The Iowa Wage Payment Collection Act allows employees to collect wages owed to them by their employees.   However, for purposes of this trial plaintiffs' claims under Iowa law are duplicative of the claims under federal law.  Although the Iowa claims apply to a larger number of employees and a shorter time period than the federal claims, the elements of those claims, that is, what the plaintiffs must prove, are the same for all the Plaintiffs.

Plaintiffs claim that Tyson Foods did not pay hourly production employees at its Storm Lake, Iowa hog-processing facility overtime pay as required by law.  In order to prevail on this claim, plaintiffs must prove each of the following facts by a preponderance of the evidence.

First, that the hourly employees of the Storm Lake facility were employed by defendant during the time period involved;

Second, that the  defendant is an employer;

Third, that the employees worked over 40 hours in a workweek; and

Fourth, that Tyson Foods failed to pay the employees the overtime pay required by law.  The parties have agreed to the first two facts –that the employees making claims under federal law were employed by Tyson Food at some point since March 31, 2004,

and that the employees making claims under Iowa law were employed by Tyson Foods at some point since February 7, 2005.[21]

---

[21] Memorandum Opinion and Order dated July 3, 2008 (Docket No. 62), at pp. 13-17 (Bennett, J.).

## 19.  FLSA – "WORK" DEFINITION (PLAINTIFFS)

Under the FLSA, the phrase "hours worked" includes all time spent by an employee that was primarily for the benefit of the employer or the employer's business and controlled by the employer.[22]  Plaintiffs claim that the time spent on Tyson's premises putting on and taking off work-related protective and sanitary equipment and gear, washing and sanitizing workers' equipment and themselves, sharpening knives, and the walking and waiting time that is required in performing these everyday duties, are "work" under the FLSA for which they should be paid.   Plaintiffs must prove that it more likely true than not that these activities are work.  When deciding whether an activity is work, it makes no difference how easy or difficult the activity is, how long it takes, or whether it requires any exertion at all.  Work includes all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.  For example, even time an employee spends waiting may be

---

[22] 8TH CIR. CIVIL PROPOSED JURY INSTR. P.80 (2010) (as modified); *Solis v. Tyson Foods, Inc.,* No. 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (jury instructions in donning and doffing case brought by United States Dept. of Labor).

work.  In deciding whether the activity is controlled by the employer you may consider

whether the employer's operation or policies require that the employee use the gear when

performing their work on the line.  In deciding whether the activity is primarily for the

benefit of the employer, you may consider whether the gear allows employees to perform

the activity more efficiently, or whether laws or regulations required the particular

activity.[23]

---

[23] 29 C.F.R., 785.7; *Tenn. Coal, Iron & RR v. Muscoda Local No. 123,* 321 U.S. 590, 597 (1944); *Armour & Co. v. Wantock*, 323 U.S. 126 (1944); *IBO v, Alvarez*, 546 U.S. 21, 25 (2005) (*Armour* "clarified that 'exertion' [I]s not in fact necessary for an activity to constitute 'work' under FLSA."); *DeAscencio v. Tyson Foods, Inc.,* 500 F.3d 361 (3rd Cir. 2007); *Davis v. Charoen Pokphand (USA), Inc.,* 302 F.Supp 2d 1314 1233n.8 (M.D. Ala. 2004); *Chao v. Tyson Foods,* No. 2-1174, Mem. Op. & Order at 29 (Jan. 22, 2008) (work does not require exertion); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 690-91 (1946).  The FLSA requires compensation for "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace."); *Solis v. Tyson Foods,* 02-cv-001174-VEH, Dkt No. 510 (N.D. Ala. October 14, 2009); *Ballaris v. Wacker Siltronic Corp.,*370 F.3d 901), 911-912 (9th Cir. 2004) (donning and doffing cleanroom "bunny suits" constitutes "work" under the FLSA); *Steiner v. Mitchell,* 350 U.S. 247 (1956) (changing of clothing and showering for health reasons is compensable work and such reason directly benefit [the employers] in the operation of its business; *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 750 F.2d 47, 50-51 (8th Cir. 1984) *(pre-trip safety inspections are work and primarily benefit the employer), *cert. denied,* 471 U.S. 1054) (1985).

## 20. FLSA- SUFFER OR PERMIT (PLAINTIFFS)

When an employer knows or has reason to believe that work under the Fair Labor Standards Act is being performed, it is the responsibility of the employer to compensate employees for such work, even if that work was not specifically requested by the employer to be performed. An employer cannot sit back and accept the benefits of such work without compensating employees for it. It is the duty of management to exercise control and make sure that work is not performed it it does not want it to be performed. Even having a rule against performing work is not sufficient for management to avoid responsibility for paying for hours worked that it knew about or had reason to know about; rather management has the power to enforce such a rule and must make every effort to do so.[24]

---

[24] *Solis v. Tyson Foods, Inc.,* 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (jury instructions in donning and doffing case brought by United States Dept. of Labor).

FINAL INSTRUCTION

## 21. FLSA-DETERMING HOURS WORKED (PLAINTIFFS)

In this case, you must determine the number of unpaid hours worked by Plaintiffs based on all of the evidence. The Defendants are legally required to maintain accurate records of its employees' hours work. If you find that the Defendant failed to maintain records of the Plaintiffs' hours worked or that the record kept by the Defendant are inaccurate, you must accept Plaintiffs' reasonable estimate of hours work, unless you find those estimated to be unreasonable.[25]

---

[25] 8TH CIR. CIVIL PROPOSED JURY INSTR. P. 81 (2010); The FLSA requires employers to "make, keep and preserve such records of the persons employed by him and of wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator [of the U.S. Department of Labor's Wage and Hour Division] as he shall prescribe by regulation or order…." 29 U.S.C. §211(c). The U.S. Department of Labor's recordkeeping regulations may be found at 29 C.F.R. §516. Where an employer has not kept adequate records of wages and hours, its employees generally may not be denied recovery of back wages on the ground that the precise extent of their uncompensated work cannot be proved. *Dole v. Alamo Foundation*, 915 F.2d 349, 351 (8th Cir. 1990). *Clemens Pottery Co,* 328 U.S. 680, 687-88 (1946) The Plaintiffs bear the burden of proving the extent of any uncompensated work, but may satisfy that burden by 'just and reasonable inference'." *Anderson*, 328 U.S. at 687-88. Once the Plaintiffs have produced such evidence of uncompensated work, "the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the interference to be drawn from the employee's evidence." *Id.*

## 22.  INTEGRAL AND INDISPENSABLE (PLAINTIFFS)

The Plaintiffs must prove by a preponderance of the evidence that unpaid activities at question in this lawsuit are  essential to their meat processing work.  If activities are essential then they are "integral and indispensable" under the FLSA.  You may consider the following factors when deciding if an activity is integral and indispensable: (1) Whether the activity is required by the employer? (2) Whether the activity is necessary for the employee to perform his duties? (3) Whether the activity benefits the employer?

Integral and indispensable activities may be performed before or after the regular work shift, on or off the production line.  They are performed as part of the regular work of the employee in the ordinary course of business.  An employee can have more than one "principal activity."  A principal activity need not be the most important activity the employee performs.

If an employee is required by (1) an employer, (2) the law, or (3) the nature of the work to change into protective or sanitary gear or equipment, clean or sanitize before beginning production line duties, and this activity benefits the employer, then the activity is integral and indispensable to the job.  The employee would then be entitled to be paid beginning when the employee dons (or puts on) the first piece of gear or equipment.

An activity is required by the nature of the work if it is necessary for the employee to perform his or her duties.  In determining whether the activity is required by the nature of the work, you may consider the environment in the plant; such as whether it is cold or wet.  An activity may benefit the employer even where there is a benefit to the

employee as well.  Only activities which are the employees own convenience, "not being required by the employer and not being necessary for the performance of their duties for the employer" are excluded from being integral and indispensable.

If the employee is required by the employer, by law or by the nature of the work to dispose or put away protective or sanitary clothing or equipment and to wash or sanitize, paid time ends at the end of the day when the employee completes all these tasks.

When deciding whether an activity is required by the employer or necessary to perform the employee's duties you should consider whether the employee is required to perform the activity at the plant and whether employees may be disciplined for failing to wear the protective or sanitary clothing of equipment.[26]

---

[26] 29 U.S.C. 254(a); 29 C.F.R. 790.7; 29 C.F.R. 690.8; *Steiner v. Mitchell* 350 U.S. 247, 256 (1956) (activities compensable whether before or after shift or off production line) *IBP v. Alvarez*, 546 U.S. 21, 32-33 (2005) (Court accepts lower courts' determinations that donning and doffing of clothing and gear in red meat and poultry plants were principal activities); 29 C.F.R. 7980.8(c)n.65; *Dunlop v. City Elect., Inc.*, 527 F.2d 394, 398, 401 (5th Cir. 1976) (citations omitted)(§4 was intended to exclude from FLSA coverage only those activities 'predominantly…spent in [the employees] own interest. No benefit may inure to the company. The activities must be undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer."); *Bellaris v. Wacker Siltronic Corp.*, 370 F. 3d 901 (9th Cir. 2004); *Burks v. Equity Group-Eufaula Division*, 2008 WL 3271905 (M.D. Ala. 2008) (donning and doffing clothing, cleaning and sanitizing in poultry plant integral and indispensable); *Jordan v. IBP Inc.*, 542 F.Supp. 2d 790 (M.D. Tenn. 2008); *Spoerle v. Kraft Foods Global Inc.*, 527 F. Supp. 2d 860 (W.D. Wis. 2007); *Tum v. Barber Foods*, 331 F.3d 1, 9 (lst Cir. 2004)(Donning an item of clothing means obtaining it); *Dominquez v. Minnesota Beef Indus., Inc.*, No. 06-1002, slip op. at l n.1 (August 21, 2007) (same); *Wage and Hour Mem.* No. 2006-2 at 1 n.1 (May 31, 2006) *Kosakow v. New Rochelle Radiology Assoc. PC,* 374 F.3d 706 (2d Cir. 2001) ("If the proper performance of [the employee's] job required the preparatory work to be completed when the first walk-in patient could potentially arrive, this time should have been counted, regardless of whether anybody specifically instructed them to arrive early.") (citing *Mitchell v. King Packing Co.*,350 U.S. 260, 263 (1956) (knife sharpening done by knifemen at a meat packing plant was integral and indispensable to employees' principal activities because knives had to be "razor sharp" for proper performance of the work). *Dunlop*, 527 F. 2d at 400 n. 11 ("The fact that the employees too may have benefited" from these activities "is not inconsistent with the conclusion that the work was an integral and indispensable function of the defendant business.") *Steiner*, 350 U.S. at 251 (employees' showering at the end of the day was indispensable and integral to employees' principal activities, as company foreman admitted that the showering activity "protects the company and the employee both."; *Brock v. Mercy Hosp. & Med. Ctr.*; No. 84-1309, 1986 WL 12877, at *6 (S.D. Cal 1986)(donning and doffing integral and indispensable); 93 *Cong. Rec.* at 2298 (1947) (a principal activity would be regarded as such, whether it took "15 or 10 minutes or five minutes or any other number of minutes." ), 29 C.F.R. 785.19(a); *Ballaris* 370 F.3d at 911 (whether employees are allowed to wear items outside plant and will be disciplined for failing to wear them "weigh heavily in favor of a determination that the activity is not excluded by the Portal Act").

Plaintiffs' No. 22 is a more accurate statement of the law than Defendant's No. 12 based on the authorities cited above. Further Defendant's No. 12 is confusing by unnecessarily describing the Portal-to-Portal Act, rather than framing the instruction in terms of the Plaintiffs' burden of proof and the relevant factors to consider in evaluating whether Plaintiffs meet that burden. It also is improperly misleading by their characterizing the issues as "clothes changing." Finally, it incorrectly elevates the burden on the third factor to be considered by requiring that the employer be the "primary" beneficiary. Under *Dunlop v. City Elect. Inc.* 527 F.2d 394, 398, 401 (5th Cir. 1976) the time is compensable unless the employee is the primary beneficiary. *Id.* (§4 was intended to exclude from F.L.S.A. coverage only those activities 'predominantly…spent in [the employee'] own interest.' No benefit may inure to the company. The activities must be undertaken 'for [the employee'] own convenience , not being required by the employer and not being necessary for the performance of their duties for the employer.")

## 23. FLSA-CONTINUOUS WORKDAY (PLAINTIFFS)

The continuous workday is the period between the start and completion on the same workday of an employee's principal activity or an activity that is integral and indispensable to a principal activity. Pre- and post-shift activities that are integral and indispensable to the production work performed by employees are considered principal activities.

Time spent after the employee engages in the first principal activity and before the employee finishes his or her last principal activity is part of a continuous workday and is all compensable under the Fair Labor Standards Act, unless it is otherwise excluded from compensation, as explained in this jury instruction.[27]  In general, an employer is required to compensate its employees for their time beginning when the employee performs the first principal activity of the workday or activity that is indispensable to a principal activity

Any non-work time spent by employees during meal or break periods when employees are completely relieved from work duties is excluded from the work day and is not compensable.

---

[27] *Solis v. Tyson Foods, Inc.,* No. 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (jury instructions in donning and doffing case brought by United States Dept. of Labor, as modified); 29 C.F.R. §785.18-19.

## 24. WALKING TIME (PLAINTIFFS)

I also instruct you that an employees' walking time to his or her department at the start of a shift, return walking away from their department at the end of a shift and walking during breaks from their job to the break area and from the break area to their job is compensable when it either follows the first principal activity or first activity that is integral and is indispensable to a principal activity or comes before the last principal activity or activity that is integral and indispensable to a principal activity.[28]

---

[28] *Alvarez v. IBP, Inc.*, 546 U.S. 21 (2005).

## 25. DE MINIMIS DEFENSE (PLAINTIFFS)

Tyson Foods is required to pay for all compensable work unless it meets the burden of proving by a preponderance of the evidence that the work is what is referred to as "de minimis."

The "de minimis" rule is concerned with the practical administrative difficulty of recording small amounts of time for payroll purposes. Employers must compensate employees for even small amounts of time, unless the time is so miniscule that it cannot as a practical administrative matter be recorded for payroll purposes. When deciding whether time is de minimis, all of the compensable time that was not paid during the continuous workday, including walk time, should be added together and you should also consider the aggregate size of the claim as a whole.

The following factors are considered in determining whether work activities are "de minimis":

1. The practical administrative difficulty of recording the uncompensated time;

2. The aggregate amount of uncompensated time;

3. The regularity of the uncompensated work.

Tyson Foods must prove this defense by a preponderance of the evidence.

This defense applies only where there are uncertain and indefinite periods of time involved that are of short duration and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's regular working time

that is regularly required to spend on assigned duties. There is no precise amount of time

that may be denied compensation as "de minimis." No rigid rule can be applied with

mathematical certainty. Rather, common sense must be applied to the facts of this case.[29]

Neither the Defendant Tyson nor the Plaintiffs contend that 15 or more minutes is

de minimis.

---

[29] *Anderson v. Mt. Clemens Pottery Co.,* 680, 692 (1946) (time must be computed "in light" of the realities of the industrial world"); 29 C.F.R. 785.47; *Lindow v. U.S.,* 738 F.2d 1057, 1062-1063 (9th Cir. 1984) ("We will consider the size of the aggregate claim. Courts have granted relief for claims that might have been minimal on a daily basis but, when aggregated, amounted to a substantial claim"); *DeAscencio v. Tyson Foods Inc.,* 500 F.3d 361 (3rd Cir. 2007) (district court must reconsider its failure to combine the donning and doffing time with walking time); *Reich v. New York City Transit Authority,* 45 F.3d 361 (2nd Cir. 1995) (time spent should be considered in the aggregate; *Saunders v. Morrell & Co.,* 1992 WL 531674 (N.D. Iowa 1992) (finding 3 minutes cleaning safety equipment not de minimis); *Kosakow v. New Rochelle Radiology Associates, PC,* 274 F.3d 706, 719 (2d Cir. 2001) (work not *de minimis* because*, inter alia*, it was not performed on a regular basis, "few and far between"); *Glenn L. Martin Nebraska Co. v. Culkin,* 197 F.2d 981, 987 (8th Cir. 1952), rehearing denied, 344 U.S. 888 (1952) (working time of $1 a week is "not a trivial matter to a workingman" and was not de minimus); *Hawkins v. E.I. DuPont de Nemours & Co.,* 12 WGH Cases 448, 27 Lab. Cas., para. 69,094 (E.D. Va. 1955) (10 minutes a day is not de minimis).

Plaintiffs' No. 25 provides a more accurate instruction on the *de minimus* defense than Defendant's alternative. Defendant does not provide authority for including its additional two factors in interpreting the three recognized factors. (i.e. the reasonable amount of duty time spent and how much of that time was uncompensable). Moreover, without any supporting authority, it seeks to change the factor regarding "practical administrative difficulty of recording the uncompensated time" to whether it was feasible "to *precisely* record that time."

## 26. FLSA-WAITING TIME (PLAINTIFFS)

Waiting time after the performance of the employee's first principal activity and before the performance of his last principal activity is compensable as part of the employee's "continuous workday."[30]

---

[30] IBP, Inc. v. Alvarez, 546 U.S. 21, 39-40 (2005) (concluding that the First Circuit was incorrect in holding that pre-doffing waiting time was not compensable on the ground that it "qualified as a 'preliminary or postliminary activity'" and was thus excluded by the Portal Act; rather, "[because doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff [as opposed to time spent waiting to don in that case] is not affected by the Portal-to-Portal Act and is instead covered by the FLSA"); Anderson v. Perdue Farms, Inc., 2009 WL 653027, at *12-*13 (M.D. Ala. March 10, 2009) (in fully adopting the continuous workday standard as set out in Alvarez, the district court stated that "under Alvarez, the same rule that applies to walking applies to waiting; if it occurs between the first and last principal activities, it is compensable") (citations omitted).

## 27. REPRESENTATIVE EVIDENCE (PLAINTIFFS)

To establish liability and damages for a group of employees Plaintiffs are allowed to present direct evidence or circumstantial evidence including but not limited to evidence that is representative of members of the group. Not all affected Plaintiffs or employees need testify in order to prove the violations of the Fair Labor Standards Act and be awarded back wages. Rather, if some employees testify about the time they worked, other non-testifying employees who perform substantially similar work are deemed to have shown the same thing by inference. This is called "representative testimony."

There is no bright-line as to the percentage of representative employees necessary; rather, the weight to be afforded the evidence is a function not of its quantity but of its quality – the fact that the testimony covers similarly situated workers, and is generally consistent. You may also consider whether the witnesses who testified that they were paid according to the same policy, worked in similar positions and similar departments as the non-testifying employees. Some other factors to consider are (1) whether they wore similar protective gear or equipment, (2) whether the testifying employees performed donning and doffing, washing and walking activities in similar places within the plant as non-testifying employees.

Standards Act in regard to all similarly situated employees, that testimony must be deemed sufficient to prove violations and the necessity for back wages for all the employees in question.[31]

---

[31] *Donovan v. Burger King Corp.*, 672 F.2d 221 (1982); *Morgan v. Family Dollar Stores, Inc,* 551 F.3d 1233, 1280 (11th Cir. 2008) "We reject Family Dollar's argument that the executive exemption defense is so individualized that the testifying Plaintiffs did not fairly represent the non-testifying Plaintiffs. For the same reasons that the court did not err in determining that the Plaintiffs were similarly situated enough to maintain a collective action, it did not err in determining that the Plaintiffs were similarly situated enough to testify as representative of one another."); *Schultz v. Capital International Security, Inc.*, 466 F.3d 298, 310 (4th Cir. 2006) ("Courts have, of course, frequently granted back wages under the FLSA to non-testifying employee.")(internal quotation marks omitted); *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 67-68 (2d Cir. 1997) ("In meeting the burden under *Mt. Clemens*, the Secretary need not present testimony from each underpaid employee; rather, it is well-established that the Secretary may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA"; as to representative testimony, "there is no bright line formulation that mandates reversal when the sample is below a percentage threshold…[T]he weight to be accorded evidence is a function not of quantity but of quality…and…depending on the nature of the facts to be proved, a very small sample of representational evidence can suffice….Our focus is not on the numbers in isolation but on whether the district court could reasonably conclude that there was sufficient evidence to show the amount and extent of…[uncompensated] work as a matter of just and reasonable inference") (citations omitted); *Secretary of Labor v. DeSisto*, 929 F.2d 789, 793-94 (lst Cir. 1991) (agreeing with the proposition that "there is no ratio or formula for determining the number of employee required to constitute a representative sample of employees; the adequacy of the representative testimony necessarily will be determined in light of the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony"); *McLaughlin v. Hot Fat Seta*, 850 F.2d 586, 589 (9th Cir. 1988) ("We hold that the *Mt. Clemens Pottery* standard allows district courts to award back wages under the FLSA to non-testifying employees based upon the fairly representative testimony of other employees."); *Donovan v. Bel-Loc Diner, Inc.*780 F.2d 1113, 1116 (4th Cir. 1985) ("There is no requirement that to establish a *Mt. Clemens* pattern or practice, testimony must refer to all non testifying employees.. *Bel Loc's* second assertion, that the Secretary was obliged to present testimony from shift of the entire back pay period from August 1976 through February 1981 to establish the requisite pattern, is equally groundless. The law makes no such requirement. Courts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees.")(footnote omitted).

Defendant's proposed No. 10 improperly seeks to have the jury determine whether employees are similarly situated. That is a question for the Court, and which the Court has already addressed. If Defendant wishes to seek reconsideration of certification following trial, it may be permitted to do so then. However, it is improper to ask the jury to determine this question. Plaintiffs No. 26 is an accurate instruction on the use of representative testimony.

## 28. DAMAGES (PLAINTIFFS)

If you find that Plaintiffs have proven their claim, then you must determine the amount of wages owed to Plaintiffs.

The Fair Labor Standards Act mandates that an employer maintain adequate and accurate payroll records. Plaintiffs have carried their burden of proving damages if they have shown the amount and extent of time for which they were not compensated as a matter of just and reasonable inference. If Tyson Foods cannot explicitly rebut that showing made by the Plaintiffs, the computations must be accepted even if they are only approximate because the lack of precision was caused by the failure of Tyson Foods to keep proper records in the first instance.

In accordance with the "continuous workday" principle, compensable time begins with the first principal activity of the day and ends with the last principal activity of the day, except for *bona fide* meal periods when the employees are completely relieved from duty. Thus, at the beginning of the day, damages should be computed from the first principal activity (which includes any activities that are integral and indispensable to performance of principal activities) of the day.

The measure of damages is the difference between what an employee should have been paid under the FLSA as a matter of just and reasonable inference and the amount that you find he or she actually was paid.

The FLSA requires an employer to pay its employees at a rate of at least one and one half times their regular rate for time worked in any one workweek over 40 hours. This is commonly known as time-and-a half pay for "overtime" work. Only if an employee worked more than 40 hours in a week is an employee owed overtime for that week.[32]

[32] See 29 U.S.C. 211©, 215(a)(5)(requirement to keep accurate records); 29 C.F.R. 516.2 (recordkeeping requirements); *Wirtz v. Mississippi Publishers Corp.,* 354 F..2d 603, 607 (5th Cir. 1966) (recordkeeping requirements are the critical underpinning of the FLSA); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946); *Morgan v. Family Dollar Stores, Inc.* 551 F.3d 1233 (11th Cir. 2008) ("In *Mt. Clemens,* the Supreme Court authorized a burden-shifting scheme designed to facilitate the ability of plaintiffs to prove an FLSA violation where the employer failed to maintain proper records (such as how many hours its employees worked and the amount of pay)."); *Allen v. Board of Public Education for Bibb County,* 495 F.3d 1306, 1315-18 (11th Cir. 2007) (describing the *Mt. Clemens* burden-shifting as resulting from the fact that "[I]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment."); O'Malley, Genig & Lee, 3C <u>Federal Jury Practice and Instructions.</u>§ 175.60 (5th Ed. 2009).

## 29.  FLSA-WAIVER PROHIBITED (PLAINTIFFS)

Employees may not waive their rights under the Fair Labor Standards Act.  This means that an employee does not lose any right he or she may have to back wages by failing to complain to his or her employer or by any other action.[33]

---

[33] *Solis v. Tyson Foods, Inc.* No. 2:02-cv-001174-VEH (N.D. Ala. Oct. 14, 2009) (Jury instructions in donning and doffing case brought by the United States Dept. of Labor)

**30. ELECTION OF FOREPERSON; DUTY TO DELIBERATE; COMMUNICATIONS WITH COURT; CAUTIONARY; UNANIMOUS VERDICT; VERDICT FORM**

In conducting your deliberations and returning your verdict, there are certain rules you must follow:

First, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your discussions and speak for you here in court.

Second, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without violence to indivdual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or simply to reach a verdict. Remember at all times that you are not partisans. You are judges-judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. Remember that you should not tell anyone-including me- how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence and on the law which I have given to you in my instructions. The verdict must be unanimous. Nothing I have said or done is intended to suggest what your verdict should be-that is entirely for you to decide.

Finally, the verdict form is simply the written notice of the decision that you reach in this case. [The form reads: (read form)]. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal or bailiff that you are ready to return to the courtroom.[34]

---

[34] 8TH CIR. CIVIL JURY INSTR.§3.06 (2008)

Respectfully submitted,

/s/ Michael Hamilton
Michael Hamilton
PROVOST UMPHREY LAW FIRM LLP
2021 Richard Jones Road, Suite 300
Nashville, TN 37215
(615) 242-0199
(615) 256-5922 (facsimile)

Robert L. Wiggins
Candis A. McGowan
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, AL 35203
(205) 314-0500
(205) 254-1500 (facsimile)

Brian P. McCafferty
Kenney & McCafferty
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
(610) 940-0327
(610) 9400284 (facsimile)

Roger K. Doolittle
460 Briarwood Drive, Suite 500
Jackson, MS 39206
(601) 957-9777
(601) 957-9779 (facsimile)

MacDonald Smith
Smith & McElwain
505 Fifth Street, Suite 530
P.O. Box 1194
Sioux City, IA 51102
(712) 255-8094
(712) 255-3825

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel via electronic mail delivery of same, properly addressed, to the following:

Allison Dana Balus
Baird  Holm LLP
1500 Woodmen Tower
Omaha, NE 68102

David J. Kramer
Baird Holm LLP
1500 Woodmen Tower
Omaha, NE 68102

Evangeline C. Paschal
Hunton & Williams, LLP
1900 K Street N.W.
Washington, DC 20006

Michael J. Mueller
Hunton & Williams LLP
1900 K Street NW
Washington, DC 20006

Steven D. Davidson
Baird Holm McEachen Pedersen Hamann & Strasheim
1500 Woodmen Tower
Omaha, NE 68102

Richard J. Sapp
Ryan Koopmans
Nyemaster, Goode, Hansell & O'Brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899

This 19th day of October, 2010

/s/Michael Hamilton_____