IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION – SIOUX CITY

| | | |
|---|---|---|
| PEG BOUAPHAKEO et al., individually and on Behalf Of Themselves and All Other Similarly Situated Individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TYSON FOODS, INC.<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 5:07-cv-04009 JAJ<br><br><br><br><br><br><br><br><br><br>**DEFENDANT TYSON FOOD, INC.'S TRIAL BRIEF** |

Defendant, Tyson Foods, Inc. ("Tyson Foods"), submits this Trial Brief.

## TABLE OF CONTENTS

I. TYSON WILL BE ENTITLED TO A DIRECTED VERDICT ON THE COMPENSABILITY OF STANDARD ITEMS BECAUSE SUCH ITEMS ARE EITHER NOT "WORK" OR ELSE THEY ARE NOT *BOTH* INTEGRAL *AND* INDISPENSABLE TO THE PRINCIPAL ACTIVITY PLAINTIFFS ARE EMPLOYED TO PERFORM............................................................................................ 1

    A. History of the Portal-to-Portal Act.......................................................... 1

    B. Plaintiffs' Interpretation of the Portal-to-Portal Act Would Make the Act a Nullity .................................................................................................... 4

II. COMPENSABLE TIME FOR DONNING, DOFFING, AND WASHING KNIFE-RELATED ITEMS, AND WALKING TO AND FROM THE EMPLOYEES' WORKSTATION, IS LIMITED TO THE MINIMINUM TIME NECESSARILY SPENT ON THESE ACTIVITIES ....................................... 8

III. TYSON WILL BE ENTITLED TO A DIRECTED VERDICT ON CLASS-WIDE RELIEF AS TO ANY CLAIMS THAT NONETHELESS REMAIN.................. 10

    A. It is Now Clear that the "Gang-Time" System is a Red Herring........................... 12

    B. The Factual Differences Between the Class Members on the Issues in Dispute are What Makes Class-Wide Treatment Inappropriate. ........................... 14

## I. TYSON WILL BE ENTITLED TO A DIRECTED VERDICT ON THE COMPENSABILITY OF STANDARD ITEMS BECAUSE SUCH ITEMS ARE EITHER NOT "WORK" OR ELSE THEY ARE NOT *BOTH* INTEGRAL *AND* INDISPENSABLE TO THE PRINCIPAL ACTIVITY PLAINTIFFS ARE EMPLOYED TO PERFORM

Donning and doffing standard sanitary and safety items, such as a frock in the Cut or Retrim departments (or, alternatively, a white shirt and pants in the Kill department), hard hat, hairnet, beard net, earplugs, and cotton and rubber gloves, (collectively, "standard items"), are noncompensable preliminary activities. These activities occur before and after the principal work activity the employees were hired to perform – i.e., processing meat. And these activities are not themselves principal activities, because they are not *both* integral and indispensable to processing meat. For this reason, Tyson will be entitled to a directed verdict on the compensability of standard items.

Under Plaintiffs' proposed jury instruction No. 25, any activity on the employer's premises that is required by and benefits the employer is a principal activity.[1] That is not the law. If it were, the Portal-to-Portal Act would be meaningless.

### A. History of the Portal-to-Portal Act

The circumstances surrounding the passage of the Portal-to-Portal Act are important to interpreting the terms "preliminary" and "principal" activity.

In 1946, the Supreme Court held in *Anderson v. Mt. Clemens Pottery Co.* that employees must be compensated for performing *"preliminary activities* after arriving at their places of

---

[1] Most employees are not even required to wear plastic sleeves, plastic aprons, or safety glasses. In addition, many jobs do not require either the cotton gloves, or the rubber gloves, or both. These items are therefore not indispensable and are not compensable even under Plaintiffs' erroneous "Integral and Indispensable" instruction. Order for Final Pretrial Conference §I.19.20.

1

work, such as putting on aprons and overalls."² 328 U.S. 680, 693 (1946) (emphasis added). The Court also held that the employees must be compensated for walking time that occurs on the employer's premises. *Id.* at 692. According to the Court, these activities fell within the definition of "work" under the facts of that particular case because they (1) involved "exertion of a physical nature," (2) were "controlled or required by the employer," and (3) were "pursued necessarily and primarily for the employer's benefit." *Id.* at 693 (emphasis added).

Justice Burton, joined by Justice Frankfurter, dissented. Justice Burton argued that there was "no evidence" that Congress intended to "set aside long established contracts or customs" and "redefine" the "word 'workweek'" in a manner that was "different from its commonly understood reference." *Id.* 697. Justice Burton believed that the FLSA did not require employers to pay overtime for "whatever preliminary activities might be ***required*** of the worker by that particular job." *Id.* (emphasis added).

A year after *Anderson*, Congress passed the Portal-to-Portal Act. The Act did not change the definition of "work" but it did overrule the Court's holding that preliminary activities and walking time were compensable under the circumstances that existed in *Anderson*. Congress agreed with Justice Burton that that the Court's interpretation of the FLSA "had superseded long-established customs, practices, and contracts between employers and employees." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 26 (2005) (internal quotation omitted).

Under the Portal-to-Portal Act, "work" activities – i.e., those activities that (1) involve "exertion of a physical nature," (2) are "controlled or required by the employer," and (3) are

---

² The Court remanded the case for a determination of whether the minutes of time at issue were *de minimis*, and therefore non-compensable on that separate ground. *See* 328 U.S. at 694.

"pursued necessarily and primarily for the employer's benefit" (*Anderson*, 328 U.S. at 693)[3] – are not compensable if they are "preliminary to or postliminary to" the "principal activity or activities such employee is employed to perform." 29 U.S.C. § 254(a). In addition, "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities" are no longer compensable under the FLSA. *Id.*

Nine years after the enactment of the Portal-to-Portal Act, the Supreme Court was asked to decide whether changing clothes and showering were principal activities for employees that worked in a battery plant where they made "extensive use of dangerously caustic and toxic materials." *Steiner v. Mitchell*, 250 U.S. 247, 248 (1956). These chemicals "attach[ed] themselves to the skin, clothing and hair of the employees" and were even a danger to the employees' families if the clothing was worn home. *Id.* at 250. For this reason, the employees showered and changed clothes at the end of the workday. *Id.* at 251.

The employees argued that these activities were compensable under the FLSA and the Portal-to-Portal Act. The district court agreed. *Id.* at 253. Because of the highly dangerous nature of the employees' work, and the importance of removing chemicals from the skin and clothes, the court found that changing and showering were "an integral part" of the employees' principal activities, and were therefore themselves principal activities. *Id.*; *see also Alvarez*, 546 U.S. at 33 (explaining the Court's holding in *Steiner*). The Court of Appeals and the Supreme Court affirmed that decision. *Id.*

---

[3] This definition of "work" survives the Supreme Court's decision in *Alvarez*, where the Court did not grant certiorari on the "work" issue and discussed that issue only in passing. *See, e.g., Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006) ( hard hats, gloves, steel-toed boots, and coverall clothing not "work" and not "integral and indispensable").

The Supreme Court explained there was no question that "changing clothes and showering under normal conditions" would "constitute 'preliminary' or 'postliminary' activities" under the Portal-to-Portal Act. *Id.* at 248. But under the extreme circumstances of that case, where such pre-production activities were "integral and indispensable" to the principal activity the employees were hired to perform, the Court held that those activities were compensable. *Id.* at 256.

### B. Plaintiffs' Interpretation of the Portal-to-Portal Act Would Make the Act a Nullity

Plaintiffs would like the Court to ignore the history of the Portal-to-Portal Act. They propose to instruct the jury that an activity is "integral and indispensable" to the principal activity (and is therefore itself a principal activity) if it is "required by (1) an employer, (2) the law, *or* (3) the nature of the work to change into protective or sanitary gear or equipment" and it "benefits the employer." Plt. Proposed Jury Inst. 25. In other words, Plaintiffs believe that only two elements are necessary to make an activity integral and indispensable: (1) it is required by the employer (2) and it benefits the employer.

Those two elements are already required for an activity to be "work" under the FLSA. *See Anderson*, 328 U.S. 369 (finding that the preliminary activities in question were "work" because they required exertion, were "controlled or required by the employer," and were "pursued necessarily and primarily for the employer's benefit"). Thus, if Plaintiffs' jury instruction were adopted, the Portal-to-Portal Act would become meaningless; all "work" activities would necessarily be "integral and indispensable" to the principal activity. That cannot

4

be the law.[4] Indeed, it would lead "to the logical (but untenable) conclusion" that the activities at issue in *Anderson* would be compensable under the Portal-to-Portal Act. *Alvarez*, 546 U.S. at 41. If the Portal-to-Portal Act is to have any meaning, there must be circumstances in which an activity is required by and benefits an employer, but is still considered "preliminary."

The Second Circuit recognized this principal in *Gorman v. Consolidated Edison Corporation*, 488 F.3d 586 (2007). Like Plaintiffs in this case, the plaintiffs in *Gorman* claimed they were entitled to compensation for donning and doffing standard items such as safety boots, safety glasses, and a hard hat. *Id.* at 592. The Second Circuit held that donning these items was a "preliminary" activity under the Portal-to-Portal Act and thus not compensable. *Id.* at 594. The court explained that "'indispensable' is not synonymous with 'integral.' 'Indispensable' means 'necessary.' 'Integral' means, *inter alia*, 'essential to completeness'; 'organically joined or linked'; composed of constituent parts making a whole.'" *Id.* at 592 (quoting *Webster's Third New Int'l Dictionary* (Unabridged) 1152, 1510-11 (1986)).

Based on these differences, the court held that while donning a hard hat may be "indispensable" (because it was required) it was surely not "integral" to the employer's principal work activity. The Second Circuit reasoned that the "donning and doffing of such generic protective gear [such as a helmet, safety glasses, and steel-toed boots] is not different in kind from 'changing cloths and showering,' which, under *Steiner*, are not covered by the FLSA." *Id.* at 594 (quoting *Steiner*, 350 U.S. at 249).

---

[4] Indeed, as even the Ninth Circuit recently recognized in a post-*Alvarez* donning and doffing case: "We discern a three-stage inquiry utilized in resolving the issue presented in *Alvarez*. The first stage addressed whether the activity constituted 'work'; the second stage addressed whether the activity was an 'integral and indispensable' duty; and the third stage addressed whether the activity was *de minimis*." *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). *See also, e.g., Smith v. Aztec, supra* note 3.

5

Case 5:07-cv-04009-JAJ   Document 174   Filed 10/20/10   Page 6 of 18

The same is true in this case: donning a hard hat, ear plugs or ear muffs (which may be attached to the hard hat), and other standard items may be "indispensable" but they are not "integral" to the employees' principal activity of processing meat. These items are not essential to complete the employees' principal task and they are not "organically joined" or "linked" to processing meat in the same manner that showering and changing cloths was essential to the employees' survival in *Steiner*. Indeed, if putting on a hard hat and inserting ear plugs before the shift begins is not a "preliminary" activity, it is difficult to imagine any work-site activity that would be excluded under the Portal-to-Portal Act.

To be sure, a few post-*Alvarez* decisions have made Plaintiffs' mistake of conflating the definition of "work" with the Supreme Court's "integral and indispensable" test. In addition, some earlier decisions have not clearly articulated the Portal Act analysis. For example, in *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47, 50 (8th Cir. 1984), the court stated that the "only activities" excluded by the Portal-to-Portal Act "are those undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer.'" (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 398 (5th Cir.1976)).[5] But the Eighth Circuit was not applying this extreme (and

---

[5] Note that the Eighth Circuit's discussion of *Dunlop* is stated in the negative. The actual *Dunlop* decision lists *three* factors for deciding whether the Portal Act applies: "what is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer," *Dunlop*, 527 F.2d at 401. Notably, the Fifth Circuit understood the Portal Act to have rendered "putting on aprons and coveralls" *non*-compensable. *See* 527 F.2d at 398 n.7. One decision to recently discuss *Dunlop* understood the Fifth Circuit to be applying three factors: "The factors to be considered are: (1) whether the activity is required by the employer, (2) whether the activity is necessary for the employee to perform his or her duties, and (3) whether the activity primarily benefits the employer." *Bonilla v. Baker Concrete Const., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007). The court also understood that not all of these factors are required: "But the "integral and indispensable" test is not a but-for test of causal necessity. '[T]he fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under Steiner.'" *Bonilla*, 487 F.3d at 1344 (quoting *Alvarez*).

6

clearly incorrect) standard to donning and doffing of standard items. *Id.* at 50. After specifically noting that clothes changing was non-compensable under the Portal Act, the Eighth Circuit merely held that truck drivers' pre-trip safety inspections and repairs were integral and indispensable to driving those trucks. *Id.*

In any event, the Supreme Court has more recently clarified that whether something is "required" or "necessary" simply is *not* the fundamental notion of the Portal Act. In *Alvarez*, the Court stated that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable." 546 U.S. at 39. That statement directly conflicts with the *Barrentine* court's statement that "only" those activities that are not "required by the employer and not being necessary for the performance of their duties for the employer" are preliminary under the Portal-to-Portal Act. *Barrentine*, 750 F.2d at 50. At least one other district court in the Eighth Circuit has apparently recognized that *Barrentine*'s analysis is no longer good law. *See Musticchi v. City of Little Rock, Ark.*, No. 4:08-cv-00419, 2010 WL 3327998, at *7-8 (Aug. 24, 2010) (following the Second Circuit's proper analysis in *Gorman*).

Because the evidence will show that donning a hard hat, ear plugs, and other standard items is not integral to Plaintiffs' principal activity (processing meat), even when those items are required to be worn in a particular job, Tyson will be entitled to a directed verdict on the compensability of these items.

## II. COMPENSABLE TIME FOR DONNING, DOFFING, AND WASHING KNIFE-RELATED ITEMS, AND WALKING TO AND FROM THE EMPLOYEES' WORKSTATION, IS LIMITED TO THE MINIMINUM TIME NECESSARILY SPENT ON THESE ACTIVITIES

Tyson does not challenge Plaintiffs' contention that donning and doffing unique safety items by knife-wielding employees are compensable. These items include a plastic belly guard, mesh apron, mesh sleeve, plexiglass arm guard, mesh glove, Polar glove, membrane skinner gloves, Polar sleeves, knife steel, and knife scabbard (collectively, "knife-related items"). Order for Final Pretrial Conference I.16, at p. 2. Tyson does, however, dispute the manner in which employees must be compensated for these activities if they are not *de minimis*.

Plaintiffs claim that they are entitled to compensation for all "time spent after the employee engages in the first principal activity and before the employee finishes his last or her last principal activity." Plt. Proposed Inst. No. 24. This instruction is based on a misunderstanding of the "continuous workday theory," which is "*generally* defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities." *Alvarez*, 546 U.S. at 29 (emphasis added).

As the Court will hear during trial, Tyson does not require its Storm Lake employees to report to the plant at a specific time to don their knife-related items. The employees are only required to be at their workstation at the start of the shift. As the evidence will show, many employees choose to arrive at the plant earlier than necessary to conduct pre-shift activities. For this reason, some employees put on their protective items in a leisurely fashion; and many do so while talking to their coworkers. In addition, after putting on some or all of their protective items, many employees walk to the cafeteria where they drink coffee and watch TV. Under these circumstances, Plaintiffs are not entitled to be compensated from the moment they choose

8

to come to the plant and begin dressing. Rather, they are entitled to compensation for the minimum time necessarily spent on otherwise compensable pre-shift activities.

This rule is dictated by the Supreme Court's decision in *Anderson*. In that case, the employees were allowed on the premises 14 minutes before the beginning of the shift so they could don aprons and overalls and walk to their workstations. *Anderson*, 328 U.S. at 683. Nevertheless, "there was no requirement that employees check in or be on the premises at any particular time during that 14-minute interval." *Id.* There was evidence that it did not take the employees near 14 minutes to complete the required tasks; indeed, "there [was] much testimony to prove that stragglers came in as late as one minute to seven," which was the beginning of the shift. *Id.* at 689. As explained by the Court: "[The employees] are free to take whatever course through the plant they desire and may stop off at any portion of the journey to converse with other employees and to do whatever else they may desire." *Id.* at 683. "Many employees took roundabout journeys and stopped off en route for purely personal reasons." *Id.* at 692

Under these circumstances, the Court held that it would be "unfair and impractical to compensate [the employees] for doing that which they were not required to do." *Id.* Although "it was necessary for [the employees] to be on the premises for some time prior and subsequent to the scheduled working hours," that time was "limited to the minimum time necessarily spent" on pre-shift activities. *Id.* at 690, 692. As such, the Court limited the "compensable working time" to that figure. *Id.* at 692; *see also Alvarez*, 546 U.S. at 26 (explaining that in *Anderson*, the Court "held that the time *necessarily* spent by employees walking from timeclocks near the factor entrance gate to their workstations must be treated as part of the workweek."). Indeed, in *Alvarez*, the Supreme Court left untouched a damages award that was *not* based on *all* of the time

9

spent from "first touch" to "last touch." *See Alvarez v. IBP, Inc.*, No. CT-98-5005-RHW, 2001 WL 34897841, at *11 (E.D. Wash. Sept. 14, 2001) *aff'd*, 39 F.3d 894, 907, 914 (9th Cir. 2003) (same).

Just as it was "unfair and impractical" to compensate the employees in *Anderson* for time spent talking to their coworkers during a time when they were not required to be on the premises, it is unfair and impractical to force Tyson to pay employees from the moment they *choose* to come to work and touch their locker. Like the employees in *Anderson*, Plaintiffs must be at the plant early enough to don their equipment and walk to their workstation before the start of their shift. But that time is "limited to the minimum time necessarily spent" on these activities. A contrary rule would be inconsistent with the Supreme Court's holding in *Anderson* (which was not affected by the Portal-to-Portal Act)[6], and would entitle Plaintiffs to compensation for drinking coffee, watching TV, and talking with friends – during a time when they are not required to be on the premise.

Tyson therefore requests that the jury be instructed that compensable time is limited to the minimum time necessarily spent on pre- and post-shift activities.

### III. TYSON WILL BE ENTITLED TO A DIRECTED VERDICT ON CLASS-WIDE RELIEF AS TO ANY CLAIMS THAT NONETHELESS REMAIN.

Plaintiffs contend in the Final Pretrial Order that "this case involves no issue related to class or collective certification or decertification" because "[t]hose issues have been resolved in

---

[6] As the Supreme Court explained in *Alvarez*, the Portal-to-Portal Act excludes certain preliminary and postliminary activities from compensable time, but it does "not purport to change this Court's earlier descriptions of the terms "work" and "workweek," or to define the term "workday." *Alvarez*, 546 U.S. at 28. Given that the Portal-to-Portal Act was passed because Congress thought the Court's interpretation was too favorable to employees, it would be strange indeed if the effect of the Act was to force employers to compensate employees for socializing on their premises when the employees are not even required to be there.

10

this Court's class certification decision reported as *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870 (N.D. Iowa 2008)." Order for Final Pretrial Conference V.A.7, at p. 14. That is not a correct statement of the law. The district court has an ongoing duty to assure that the class remains certifiable under Rule 23 and the FLSA. *See Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999); *Hervey v. City of Little Rock*, 787 F.2d 1223 (8th Cir. 1986) (affirming district court's decision to decertify the class after trial); *Brown v. Dollar General Stores, LTD.*, 7:02-cv-00673, Dkt. 517 (N.D. Ala. Jul. 15, 2005) (granting the defendant's motion to decertify an FLSA collective action after a week of trial and allowing the named plaintiffs to proceed on an individual basis) (attached as Exh. A).

In addition, it remains the Plaintiffs' burden at trial to prove each of the elements of their claims for every member of the class. *See, e.g., Cimino v. Raymark Indus.*, 151 F.3d 297, 312 (5th Cir. 1998) (class action device does not "alter the required elements which must be found to impose liability and fix damages (or the burden of proof thereon) or the identity of the substantive law."); *In re Welding Fume Products Liability Litig.*, 245 F.R.D. 279, 311 (N.D. Ohio 2007) (finder of fact must be able to "determine, on a class-wide basis, whether the defendant's conduct" was a violation toward every plaintiff). Thus, even assuming that the Court does not decertify the class at the close of the Plaintiffs' case-in-chief, the *jury* must still agree that the Plaintiffs' claims have been established on a class-wide basis.

At the end of Plaintiffs' case in chief, it will become clear that the "gang-time" compensation system on which Plaintiffs class certification motions were predicated is irrelevant, and that "very big factual differences" dominate the only remaining issues this case. *Bouaphakeo*, 564 F. Supp. 2d at 898. Tyson will therefore request that the Court decertify both

11

the Rule 23 class and the FLSA collective action. In the alternative, Tyson will request a directed verdict on class-wide issues so that only the claims of the named Plaintiffs will go to verdict. Plaintiffs will not be able to prove that the absent class members are "similarly situated" (the standard for the FLSA collective action), or that each and every member of the class was commonly undercompensated for pre- and post-shift activities (the standard for the Rule 23 class). *See Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 570-88 (E.D. La. 2008) (decertifying FLSA collective action after trial because evidence showed that employees were not similarly situated); *Elizabeth M. v. Montenez*, 458 F.3d 779, 786-87 (8th Cir. 2006) (discussing what Rule 23 class representative must eventually prove; "The presence of a common legal theory does not establish typicality when proof of a violation requires individualized inquiry.").

### A. It is Now Clear that the "Gang-Time" System is a Red Herring

In their motions for class certification, Plaintiffs represented to the Court that the legality of Tyson's "gang-time" compensation system was the overarching issue in this case, and that certification was therefore appropriate under both the collective action and Rule 23 standards. Indeed, Plaintiffs based their entire collective action and Rule 23 motions on this issue. For instance, Plaintiffs alleged that certification was proper because the "'gang-time' system violates Iowa state law" and "federal law." Plt. Memo in Supp. of Motion for Rule 23 Class Certification at 5; Plt. Memo in Supp. of Motion for Conditional Certification as Collective Action at 2.

Judge Bennett carefully reviewed the record, and after providing an extensive "summary of the factual circumstances concerning the putative collection action" and Rule 23 state class action, he determined "that there are some very big factual differences among hourly employees

12

at Tyson." *Bouaphakeo*, 564 F. Supp. 2d at 898. But, based on Plaintiffs' representations that they were challenging the legality of the gang-time compensation system, Judge Bennett nevertheless determined that this issue was the "'tie that binds' most all putative plaintiffs together." *Id.* at 899. Judge Bennett therefore certified a FLSA collective action and a Rule 23 class of all Storm Lake employees that were paid on the gang-time system. He explained: "The court does believe, however, that potential plaintiffs are similarly situated if the collective action class is limited to only those production employees that are paid via gang time. Gang time, after all is the company-wide policy that Plaintiffs claim violates the FLSA." *Id.* at 900.

As the Court will discover as the trial progresses, there is nothing magical about the gang-time system that makes the employees similarly situated or the victims of a common unlawful policy for purposes of the issues that are in dispute and will actually be tried in this case. The gang-time system pays each employee for all *production* work from the time the first meat passes their workstation until the last meat passes their workstation. Despite Plaintiffs' allegations that the gang-time system is "illegal," they do not claim in the Final Pretrial Order that they are unfairly compensated for production time. Plaintiffs' factual contentions focus entirely on pre- and post-production activities.

As is clear from the Final Pretrial Order, the only issues remaining in this case are whether donning and doffing standard items should be compensable at all (which as explained above is clearly no), and whether knife-wielding employees are paid enough for the protective gear they put on and take off; the clothing worn, and the "additional minutes" paid (the "K codes") vary extensively by job. Order for Final Pretrial Conference § IV.A.2, .4, pp. 7-8. How Tyson pays employees for *production* time has no bearing on these issues. Indeed, if Plaintiffs

13

punched a time clock when entering and leaving the production floor, and were paid on that basis for production work rather than on gang time, the issues in this case would be exactly the same.

### B. The Factual Differences Between the Class Members on the Issues in Dispute are What Makes Class-Wide Treatment Inappropriate.

Because Plaintiffs claim they are undercompensated for pre- and post-production activities, and are not challenging the gang-time system itself, Plaintiffs will be unable to prove class-wide liability. Judge Bennett has already determined that – outside of the gang-time system – he did "not believe the factual settings of potential plaintiffs support[ed] a finding that they are similarly situated." *Bouaphakeo*, 564 F. Supp. 2d at 898-99. As summarized by Judge Bennett, Plaintiffs "are spread across six [now three] different departments that have their own specific duties and supervisors. Moreover, the kinds of PPE worn, the types of tools used, and the compensation system within the departments are often different." *Id.*[7]

Under similar circumstances a district court in the Eastern District of Pennsylvania recently decertified a collective action concerning issues of donning and doffing. The plaintiffs argued that the employer's uniform compensation system was "'the tie that binds' the collective action class together." *Lugo v. Farmer's Pride Inc.*, -- F. Supp. 2d --, 2010 WL 3370809 (E.D. Pa. Aug. 25, 2010). The court nonetheless looked beyond the plaintiffs' allegations and realized the plaintiffs were not claiming that the entire compensation system was illegal, but were instead making two "more specific challenges to the defendant's compensation system": (1) that it "did not operate and was not implemented in the manner the defendant claims," and (2) "that the

---

[7] Judge Bennett refused to certify three departments for class treatment. The only ones remaining in the classes are Kill, Cut and Retrim.

14

system, even if implemented as defendant claims nonetheless undercompensated for donning and doffing." *Id.* at *10.

Based on these two specific questions, the court found that the employees were not similarly situated such that a class trial was inappropriate, despite the prior conditional certification of the class. The "evidence indicate[d] that plaintiffs worked in different positions and departments and on different shifts at defendant's plant, and that these positions and departments varied not only as to the PPE required and worn, but also as to the schedules followed and the amount of time provided for donning-and-doffing activities before and after the shifts and meal periods." *Id.* at *11. The court also found that "the time study prepared by plaintiffs' expert, Dr. Kenneth Mericle,[8] indicated significant variation among workers regarding the amount of time necessary to perform these tasks." Based on this evidence, the Court decertified the class:

> The evidence indicates that there may be some hourly production workers who have legitimate claims of undercompensation for time spent donning and doffing, and some who may not; the evidence does not demonstrate, however, that the question of undercompensation can be answered in manner common to all plaintiffs. If the present case were tried collectively and a verdict were reached for defendant, this result would be unfair to those plaintiffs who may have been denied pay owed them for donning and doffing; similarly, if a verdict were reached for plaintiffs, this would be unfair to defendant, who would be deemed liable as to the entire collective-action class when it may not have undercompensated all individual members of that class.

*Id.*

The same problems will become evident in this case as the trial progresses. Plaintiffs vary widely in job duties, departments, and the clothing and safety items they are required to wear.

---

[8] Dr. Mericle is also Plaintiffs' expert in this case. The evidence will show that he detected the same significant variations in donning and doffing-related times at Tyson's Storm Lake hog-processing facility.

15

Moreover, Plaintiffs have been paid differing amounts for pre- and post-production activities; indeed, from early 2007 until mid-2010, these payments *were entirely job specific and not in common at all.* Because of these "very big factual differences" Plaintiffs will not be able to provide class-wide proof or representative evidence on the *specific* issue in this case: whether Plaintiffs were undercompensated for pre- and post-production activities. Tyson will therefore ask the Court to decertify the class after the close of Plaintiffs' case or to submit a directed verdict on class issues.

Respectfully submitted,

/s/ Richard J. Sapp            AT0006915
NYEMASTER, GOODE, WEST,
HANSELL & O'BRIEN, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-3144
Facsimile: (515) 283-8045
E-Mail: rjs@nyemaster.com

Michael J Mueller*
Evangeline C Paschal*
HUNTON & WILLIAMS LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
E-mail: mmueller@hunton.com
         epaschal@hunton.com
*Admitted Pro Hac Vice

**ATTORNEYS FOR DEFENDANT TYSON FOODS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on **October 20, 2010**, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following:

MacDonald Smith
SMITH & MCELWAIN LAW OFFICE
505 Fifth Street, Suite 530
P.O. Box 1194
Sioux City, IA 51102
Telephone: (712) 255-0894
Facsimile: (712) 255-3825
E-mail: smitmcel@aol.com
**and**
Brian P. McCafferty
KENNEY, LENNON & EGAN LAW FIRM
3031C Walton Road, Suite 202
Plymouth Meeting, PA 19462
Telephone: (610) 940-9099
Facsimile: (610) 940-0284
E-mail: bmccafferty@kemy-law.com
**and**
Michael Hamilton
PROVOST UMPHREY LAW FIRM
2002 Richard Jones Road, Suite C103
Nashville, TN 37215
Telephone: (615) 242-0199
Facsimile: (615) 256-5922
E-mail: mhamilton@provostumphrey.com
**and**

Roger K. Doolittle
460 Briarwood Drive, Suite 500
Jackson, MS 39206
Telephone: (601) 957-9777
Facsimile: (601) 957-9779
E-mail: rogerkdoolittle@aol.com
**and**
Richard A. Kaspari
METCALF, KASPARI, HOWARD
ENGDAHL & LAZARUS P.A.
333 Parkdale Plaza
1660 South Highway 100
Minneapolis, MN 55416-1573
Telephone: (952) 591-9444
Facsimile: (952) 591-5806
E-mail: rkaspari@metcalf-law.com
**and**
Candis A. McGowan
Robert L. Wiggins
WIGGINS, CHILD, QUINN &
PANTAZIS, L.L.C.
301 19th Street North
Birmingham, AL 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
E-mails: cmcgowan@wcqp.com
       rwiggins@wcqp.com

**ATTORNEYS FOR PLAINTIFFS**

/s/ Richard J. Sapp      AT0006915
NYEMASTER, GOODE, WEST,
HANSELL & O'BRIEN, P.C.

85155-1