IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PEG BOUAPHAKEO, et al., individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TYSON FOODS, INC.,<br><br>Defendant. | No. 5:07-cv-04009-JAJ<br><br><br><br><br><br>**ORDER** |

This matter comes before the court pursuant to defendant's July 27, 2011 motion for decertification of Rule 23 class [dkt. 212]. Plaintiffs filed their opposition to defendant's motion to decertify Rule 23 class on August 19, 2011 [dkt. 227]. Defendant filed its reply brief on August 24, 2011[dkt. 226-1].

Defendant argues that the Supreme Court's recent decision in <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S. Ct. 2541 (June 20, 2011) mandates decertification of the plaintiffs' Rule 23 class. Defendant argues that decertification is warranted because the court's[1] order granting class certification found that defendant's gang time compensation system was the "tie that binds" the class together under a single purported common question of law, and the Supreme Court in <u>Dukes</u> held that common questions of law are not sufficient to certify a class. Further, defendant claims that plaintiffs' use of a "representative sample" of hourly employee witness to prove class claims is prohibited by <u>Dukes</u>, which makes clear

---

[1] <u>See</u> Judge Bennett's July 3, 2008 Memorandum Order and Opinion Regarding Plaintiffs' Motions for Conditional Certification as a Collective Action under the FLSA and Certification as a Class Action under Rule of Civil Procedure 23 [dkt. 62].

an employer's entitlement to individualized determinations of each class member's eligibility for back pay and expressly rejects certification of back pay claims proven through a "sample set" of class members whose damages are extrapolated to the entire class.

Plaintiffs argue in their resistance to defendant's motion to decertify should be denied because, unlike Dukes, this case involves no individual-by-individual determinations, and defendant's de minimus defense likewise must be answered across-the-board "in one stroke" for the class as a whole. Plaintiffs claim that this case satisfies the Dukes standard for commonality because a "common answer" is required for the following dispositive question: whether the subject activities are "work" and "integral and indispensable" to a principal activity because they are necessary to job performance and primarily benefit the defendant.

The court has studied the Dukes decision and finds its holdings and analysis largely inapplicable to and/or distinguishable from the instant case. In Dukes the District Court and the Court of Appeals approved the certification of a class comprising about one and a half million plaintiffs nationwide, current and former female employees of Wal-Mart who alleged that the discretion exercised by their local supervisors over pay and promotion matters violated Title VII by discriminating against women. Dukes, 131 S.Ct. at 2547. In additional to injunctive and declaratory relief, the plaintiffs in Dukes also sought an award of backpay. Id. It was undisputed in Dukes that pay and promotion decisions were generally committed to "local managers' broad discretion, which is exercised 'in a largely subjective manner'" with only limited corporate oversight. Id. The plaintiffs in Dukes never alleged that Wal-Mart had an express corporate policy against the advancement of women, but rather claimed that their local managers' discretion over pay and promotions was exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees. Id. at 2548. As described by the Court:

> Importantly for our purposes, respondents claim that the discrimination to which they have been subjected is common to *all* Wal-Mart's female employees. The basic theory of their case is that a strong and uniform "corporate culture" permits bias against women to infect, perhaps subconsciously, the discretionary decisionmaking of each one of Wal-Mart's thousands of managers - thereby making every woman at the company the victim of one common discriminatory practice.

Id.

As evidence in support of the "commonality" requirement of Rule 23(a)(2), the plaintiffs in Dukes relied primarily on three forms of proof. Id. at 2549. First, plaintiffs provided statistical evidence about pay and promotion disparities between men and women at Wal-Mart. Id. Second, plaintiffs produced anecdotal reports of discrimination from about 120 of Wal-Mart's female employees. Id. Third, plaintiffs relied on the testimony of a sociologist who conducted a "social framework analysis" of Wal-Mart's "culture" and personnel practices, and concluded that the company was "vulnerable" to gender discrimination. Id.

Noting that the "crux of this case is commonality," the court noted:

> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," Falcon, supra, at 157, 0102 S.Ct. 2364. This does not mean merely that they have all suffered a violation of the same provision of law. Title VII, for example, can be violated in many ways - by intentional discrimination, or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company. Quite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention - for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover,

>must be of such a nature that it is capable of classwide resolution - which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

Id. at 2551.

As Dukes was a Title VII case, the focus of the inquiry in resolving each individual's claim was "the reason for [the] particular employment decision." Id. at 2552 (quoting Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 876, 104 S. Ct. 2794, 81 L.Ed.2d 718 (1984)). As such, Dukes involved "literally millions of employment decisions" and "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it [would] be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." Id.

Similar to Dukes, the Supreme Court in General Telephone Co. v. Falcon, 457 U.S. 147 (1982) rejected a class comprising all employees wrongfully denied promotions and all applicants wrongly denied jobs for lack of commonality and typicality. Specifically, the Court held that one named plaintiff's experience of discrimination was insufficient to infer that "discriminatory treatment is typical of [the employer's employment] practices." Id. at 158. The Court in Falcon suggested two ways in which commonality and typicality may have been shown. First, if the employer "used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a)." Id. at 159, n. 15. Second, "[s]ignificant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." Id.

Noting the absence of "significant proof" that Wal-Mart was operating under a "general policy of discrimination," and further noting that Wal-Mart's announced policy actually forbids sex discrimination, the Court in Dukes found that the only policy established by plaintiffs' evidence was Wal-Mart's "policy" of allowing discretion by local supervisors over employment matters which is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action." Dukes, 131 S. Ct. at 2554.

> [D]emonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's. A party seeking to certify a nationwide class will be unable to show that all the employees' Title VII claims will in fact depend on the answers to common questions.
>
> [Plaintiffs] have not identified a common mode of exercising discretion that pervaded the entire company . . . In a company of Wal-Mart's size and geographical scope, it is quite unbelievable that all managers would exercise their discretion in a common way without some common direction. [Plaintiffs] attempt to make that showing by means of statistical and anecdotal evidence, but their evidence falls well short.

Id. at 2554-55.

With respect to the Rule 23 class at issue, this court disagrees with the defendant's contention that Judge Bennett certified a Rule 23 class based on what he found to be a single common question of law: "whether Tyson's gang time compensation system violates the law." In addition to the common legal question identified by Judge Bennett, which this court has interpreted *not* to be a challenge to the legality of the "gang time" system per se, but rather whether the defendant has paid its production workers for all "work" performed prior and subsequent to "gang time," particularly the time spent donning, doffing, and cleaning PPE, Judge Bennett also noted numerous factual similarities among the employees paid on a "gang time" basis. Unlike Dukes, there is a common answer available to this

question because, unlike <u>Dukes</u>, the instant case involves a company wide compensation policy that is applied uniformly throughout defendant's entire Storm Lake facility. If it is determined that the donning and doffing and/or sanitizing of the PPE at issue constitutes "work" for which plaintiffs are entitled to compensation, then such a determination is applicable to all such situated plaintiffs. The instant matter is not like <u>Dukes</u> where each alleged Title VII violation involved an inquiry into the individual decisionmaker's subjective thought process. Moreover, the court does not see the same evidentiary defects in the instant case as those addressed in <u>Dukes</u>, as the instant case is supportable by class-wide proof.

Finally, the court finds inapplicable and/or distinguishable the analysis/holding of <u>Dukes</u> as it pertains to plaintiffs' claims for backpay. The class in <u>Dukes</u> was certified pursuant to Rule 23(b)(2), which "allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" <u>Dukes</u>, 131 S. Ct. at 2257 (quoting Rule 23(b)(2)). Rather, Judge Bennett found that the class was properly certified under Rule 23(b)(3). As noted by the Court in <u>Dukes</u>, "We think it clear that individualized monetary claims belong in Rule 23(b)(3)." <u>Id.</u> at 2558.

Upon the foregoing,

**IT IS ORDERED** that defendant's motion for decertification of Rule 23 class [dkt. 212] is **DENIED.**

**DATED** this 25th day of August, 2011.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA

6