**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION - SIOUX CITY**

| | | |
|---|---|---|
| PEG BOUAPHAKEO, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil No. 5:07-cv-04009-JAJ-TJS |
| | | **EXPEDITED DETERMINATION** |
| | | **REQUESTED** |
| TYSON FOODS, INC. | ) | |
| Defendant. | ) | |

**PLAINTIFFS' TRIAL BRIEF ON ISSUES TO BE DECIDED BY THE COURT AS A**
**MATTER OF LAW AND ISSUES TO BE DECIDED BY A JURY**

**TABLE OF CONTENTS**

I.      THE COURT MUST DECIDE COMPENSABILITY AS A MATTER
        OF LAW, NOT THE JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     THE COURT MUST FIRST DECIDE WHAT IS COMPENSABLE
        AS A MATTER OF LAW BEFORE THE JURY CAN DECIDE
        WHETHER  THOSE COMPENSABLE ACTIVITIES ARE *DE MINIMIS*
        OR THE AMOUNT OF BACK PAY FOR SUCH ACTIVITIES . . . . . . . . . . . . . . . . . 12

III.    LIABILITY MUST BE BASED ON RECORDS OF ACTUAL HOURS SPENT
        RATHER THAN ESTIMATES OF "AVERAGE" OR  "REASONABLE" HOURS . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**PLAINTIFFS' TRIAL BRIEF ON ISSUES TO BE DECIDED BY THE COURT AS A MATTER OF LAW AND ISSUES TO BE DECIDED BY A JURY**

This memorandum addresses the question set forth in the Pretrial Order concerning which issues are for the Court to decide as a matter of law and which issues are for the jury to decide as disputed questions of fact. In addition, Magistrate Judge Shields informed the parties at the pretrial conference that the Court is reviewing the jury instructions given by Judge Strom in the recent trial of *Lopez v. Tyson Foods, Inc.*, Civil Action no. 06-0459-JFB-TDT. When plaintiffs' counsel reported that they had appealed certain of such instructions, Judge Shields asked that the plaintiffs notify the Court about which of the *Lopez* instructions are being challenged. This Memorandum addresses that issue. The principal error that has been appealed in the *Lopez* case is allowing the jury to decide the issue of compensability, both as to which activities are "work" for purposes of the FLSA and "integral and indispensable" to a "principal activity" for purposes of the Portal Act. Those are issues that must be decided by the Court as a matter of law. *See* precedent cited *infra* at pp. 2-6. The parties' stipulations in the Pretrial Order provide the facts necessary for the Court to decide compensability as a matter of law at the trial of this case.[1]

## I. THE COURT MUST DECIDE COMPENSABILITY AS A MATTER OF LAW, NOT THE JURY

Whether the activities at issue constitute "work" covered by the FLSA or a "principal activity" covered by the Portal Act are questions of law to be decided by the Court, not a jury. The Supreme Court has held that "[t]he question whether . . . particular activities [are] excluded from the overtime benefits of the FLSA is a question of law" for the court, while the underlying question of

---

[1] The plaintiffs in *Lopez* appealed Jury Instruction No. 17 insofar as it instructed the jury that "[t]he first issue you will have to decide is whether or not the activities at issue are 'work.'" They also appealed *Jury Instruction No. 15* insofar as it allowed a jury to decide the Portal Act issue of whether such activities are compensable activities.

whether the plaintiffs actually performed such activities "is a question of fact." *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). All ten Circuits that have addressed the issue, including the Eighth Circuit, have held that the determination of whether particular activities are compensable under the FLSA is a question of law for the court to decide, not the jury. *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997) ("The ultimate question of whether an employee falls within the FLSA's protection is a question of law"); *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992) ("Whether a certain set of facts and circumstances constitute work for purposes of the FLSA is a question of law."); *Holzapfel v. Town of Newburgh, NY*, 145 F.3d 516, 521-522 (2nd Cir. 1998) ("[T]he trial judge was responsible for determining as a matter of law whether plaintiff's activities could potentially constitute 'work.'"); *Ballou v. General Elec. Co.*, 433 F.2d 109, 111 (1st Cir. 1970) ("Though it may be complex, the issue whether or not the [activity] was an "integral and indispensable part" of appellants' principal activity is not, as appellants suggest, a factual one. It is a question of law. * * * [T]he issue was not one of factual inferences to be decided by a jury." ); *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir.1991) (en banc); *Berry v. County of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994) ("[W]hether . . . employees' personal activities . . . would be considered compensable overtime under the FLSA is a question of law."); *Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580, 582 (7th Cir. 2005); *Hamilton v. United States*, 85 Fed. Cl. 206, 215-26 (Fed. Cl. 2008) (same); *Farmer v. Ottawa County*, 211 F.3d 1268, 2000 WL 420698, at *3 (6th Cir. Apr. 13, 2000); *De Ascensio v. Tyson Foods, Inc.*, 500 F.3d 361, 371-73 (3d Cir. 2007);   *see also Donovan v. Weber*, 723 F.2d 1388, 1391-1392 (8th Cir. 1984)("The determination of enterprise coverage under the FLSA is one that must be resolved on the facts of each case, but is nevertheless a question of law."); *Wisnewski v. Champion Healthcare Corp.*, 2000 U.S. Dist. LEXIS 12734, *19 (D. N.D. 2011) ("The issue of correctly calculating

3

overtime compensation is a question of law for the court to decide."); *Walton v. Greenbrier Ford*, 370 F.3d 446, 450 (8th Cir. 2004); *Stewart v. Paffford Ambulance Svc., Inc.*, 2001 U.S. App. LEXIS 14418, *2 (8th Cir. 2000).[2]

Clearly demarcating the issues for the Court to decide versus the subsidiary factual issues for the jury to decide is critical not just to the scope of the evidence at trial, but also to prevent the jurors from deciding for themselves what the law is or should be. Questions of law must be decided solely by the Court so that the statute applies equally across all cases through principles of *stare decisis*. *See e.g. Birdwell*, 970 F.2d at 807 (Requiring courts to decide FLSA compensability issues as a matter of law so that "like facts will receive like treatment in a court of law" under principles of *stare decisis*.); *Bright*, 934 F.2d at 674-675; *see also Brock v. El. Paso Natural Gas Co.*, 826 F.2d

---

[2] *See also Brock v. City of Cincinnati*, 236 F.3d 793, 800 (6th Cir. 2001) ("We review de novo the district court's ultimate determination of whether the employees at issue were salaried employees and thus exempt from the FLSA's overtime compensation provisions." * * *Accordingly, we will review the district court's underlying findings of fact for clear error but review de novo the district court's application to those facts of the legal standards contained in statutes, regulations, and caselaw."); *Vonbrethorst v. Washington County, Idaho*, 2008 U.S. DIST. LEXIS 25720, **4-5 (D. Idaho 2008) ("Whether a particular set of facts constitutes compensable "work" under the Fair Labor Standards Act (FLSA) is a legal question for the court. * * * In other words, a jury must determine which activities were engaged in during the time in question and a court determines if those facts give rise to liability.); *Millken v. Kranz Tree Service, Inc.*, No. 6:08-cv-822, 2008 WL 4469882, at *2 (M.D. Fla. Oct. 2, 2008) (relying on Eighth Circuit decision for proposition that FLSA coverage presents a question of law); *Ingram v. County of Bucks*, Case No. 96-2122, 1997 WL 197299, at *2 (E.D. Pa. 1997) (work is question of law); *Clay v. City of Winona*, 753 F.Supp. 624, 628 (N.D. Miss. 1990) ("Although the inquiry in this case is fact specific … the court is required to look at prior precedent to determine whether the time is compensable."); *Ingram v. County of Bucks*, Case No. 96-2122, 1997 WL 197299 (E.D. Pa. April 16, 1997) (same); *Reedy v. Rock-Tenn Co. of Ark.*, Case No. 4:08CV00413, 2009 WL 1855544, at *2 (E.D. Ark. June 29, 2009) ("[T]he ultimate question of whether Reedy is exempt from the FLSA is an issue of law but there may still be issues of fact regarding the nature of Reedy's duties"); *Frank v. Gold'n Plump Poultry, Inc.*, 2007 WL 2780504, *4 (D. Minn. 2007) ("Gold'n Plump argues that donning and doffing is not work. Whether this defense is viable is a question of law and thus will be answered the same with respect to all 244 plaintiffs."); *Phillips v. City of Pine Bluff, AR*, Case No. 5:07CV00207, 2008 WL 2351036, at *1 (E.D. Ark. June 4, 2008) (reversing earlier decision to submit "work" issue to jury and resolving compensability of activities as a matter of law).

369, 374 (5th Cir. 1987) (Same: "*Stare decisis* means that like facts will receive like treatment in a Court of law.");*Tate v. Showboat Marina Casino Partnership*, 431 F.3d 580, 582 (7th Cir. 2005) (*stare decisis* eliminates plaintiffs' entitlement to jury to determine whether they are covered employees under the FLSA because different employees in different lawsuits engaging in the same activities must be treated the same from case to case).

There can be no such "like treatment" as to what is compensable under the FLSA unless the Court decides questions of law for itself and restricts the jury to well-defined issues of subsidiary fact that have not been stipulated and are genuinely in dispute. Otherwise, the law will vary from one person to another at the pleasure of different juries. The Eighth Circuit has held that "[t]he FLSA establishes **uniform national minimum standards** for various working conditions, including wages and hours, in businesses covered by its provisions." *Donovan v. Weber*, 723 F.2d 1388, 1391 (8th Cir. 1984) (emphasis added). There can be no such "uniform national standards" if juries are left to decide questions of law *ad hoc*. The Supreme Court's decision in *Icicle Foods*, and the Court of Appeals' well-defined boundary between questions of law and questions of fact in FLSA cases, require precision in what is allowed to be submitted to a jury in wage-and-hour cases.

Unlike at summary judgment, the Court must determine compensability as a mater of law even if there are disputed issues of material fact that must first be determined by the jury. Juries are limited to the subsidiary factual question of what duties the plaintiffs perform (assuming that the parties have not already stipulated to such duties or their ultimate compensability, which is the case here). *Icicle Seafoods*, 475 U.S. at 714; *Reich v. Stewart*, 121 F.3d 400, 404 (8th Cir. 1997) ("The ultimate question of whether an employee falls within the FLSA's protection is a question of law . . . . However, the amount of time an employee works and the duties he or she performs present factual questions . . . ."); *Birdwell*, 970 F.2d at 808 ("It is for the court to determine if a set of facts

5

gives rise to liability; it is for the jury to determine if those facts exist."); *Spinden v. GS Roofing Co., Inc.*, 94 F.3d 421, 426 (8th Cir. 1996) ("In an FLSA exemption analysis, 'the amount of time devoted to administrative duties, and the significance of those duties, present factual questions.' The ultimate question, however, of 'whether employees' particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . governed by the pertinent regulations promulgated by the Wage and Hour Administrator.'"); *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1117 (10th Cir. 1999) (noting that the precise nature of the employees' duties is a question of fact, while the application of the FLSA to those duties is a question of law); *Holzapfel*, 145 F.3d at 521.[3]

There are no such subsidiary facts for the jury to decide in this case on the issue of compensability because Tyson has stipulated that most of the activities at issue are, in fact, compensable. *See Stipulation* nos. 25, 34 & 39 (Doc. 160-1). *Stipulation* no. 25 establishes that "[t]he parties agree that donning, doffing and rinsing the following items is compensable: mesh apron, belly guard, steel, scabbard, mesh glove, Polar glove, Polar sleeve, plexiglass arm guard, mesh sleeve, and membrane skinner gloves." (Doc. 160-1).[4] This stipulated compensability includes "sanitary" gear and equipment, such as the "Polar Glove and Polar Sleeves" listed in the stipulation.

---

[3] *Hosler v. Smithfield Packing Co.*, 2010 U.S. Dist. LEXIS 101779, *24 (N.C. 2010) ("'Whether an activity is preliminary or postliminary to [the] principal activities . . . is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law.'") (quoting *Jackson v. BECCM Co., Inc.*, No. 3:09cv00054, 2010 U.S. Dist. LEXIS 576, 2010 WL 56077, at *4 (W.D. Va. 5 Jan. 2010) (quoting *Baker v. Barnard Constr. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998)).

[4] The parties' Pretrial Order states that "[t]he parties agree that the [foregoing] facts are true and undisputed" (Doc. 160-1 at p. 2), including the stipulated fact that a specified combination of both "sanitary" and "safety" gear and equipment is "compensable." *See Stipulation* nos. 23 and 25 (Doc. 160-1). The *Final Pretrial Order* entered September 1, 2011 (Doc. 229) adopts the parties' earlier Pretrial Order in Doc. 160-1.

*See also Stipulation* no. 23 (stipulating to "sanitary items and equipment . . . such as the company-issued . . . Polar gloves and Polar sleeves.").[5] Tyson has also stipulated to the nature of the duties that the plaintiffs perform. *See Stipulation* nos. 16-25 (Doc. 160-1).

The Eighth Circuit has held that there is no role for a jury to play when the parties have stipulated to the facts necessary for the court to decide a question of law. *Brennan v. Plaza Shoe Stores, Inc.*, 522 F.2d 843, 846 (8th Cir. 1975) ("Here, the parties present a record of largely undisputed facts. Thus, whether these facts establish the existence of an enterprise becomes a question of law . . . ."); *see also Bright*, 934 F.2d at 675 ("Here, the undisputed facts show that the on-call time is not working time. In such a setting, we have not hesitated to so hold as a matter of law."); *Vonbrethorst*, 2008 U.S. DIST. LEXIS 25720 at *5 ("In this case (as in most other FLSA cases) there is no dispute over which activities employees engaged in. * * * Thus, it becomes the primary job of the court to find a way to balance these factors by comparative evaluation between the facts of the instant case with those of other cases.") (citing *Berry*, 30 F.3d at 183).

Tyson has further stipulated that before February 4, 2007 it did not pay employees for the walking time following such compensable activities which the Supreme Court held to be compensable as a **matter of law** in *IBP v. Alvarez*, 546 U.S. 21, 37, 40 (2005). *See Stipulation* nos. 34 and 40 (Doc. 160-1).[6]  The Court held that "during a continuous workday, any walking time that

[5] More than 85% of the class members in this case worked in jobs that are subject to the parties' stipulation of compensability contained in Stipulation no. 25. Tyson's records show that there were only 443 of the 3,344 class members (13.25%) who never worked in the knife-related jobs that are subject to the parties' stipulations of compensability. The plant Human Resource Director, Bill Sager, has testified that at least 70% of the hourly production employees are in knife-related jobs at any one time. *Sager Depo.* at 7.

[6] Tyson stipulated that "[o]n February 4, 2007, the company **added** its calculation of the pre- and post-shift walking time at the Storm Lake facility to the amount of time employees in various job positions were determined in 1998 to spend performing the various pre- and post-shift activities." *Stipulation* no. 34 (Doc. 160-1) (emphasis added). *Stipulation* no. 40 reiterates that "[s]tarting

7

occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity . . . is covered by the FLSA." *IBP v. Alvarez*, 546 U.S. at 37. This is exactly the same walking time that was not compensated at the current IBP-Tyson plant in Storm Lake, Iowa before February 7, 2007. *See Stipulation* nos. 34 and 40 (Doc. 160-1); *see also* fn.8 *infra*. The Storm Lake plant in this case is a former IBP plant that follows *the same* centralized IBP non-payment policy that was held to violate the FLSA as a matter of law in *IBP v. Alvarez*, 546 U.S. at 37, 40 at IBP-Tyson's plant in Pasco, Washington.[7] Because it has been stipulated that nothing was paid for such walking time before February 4, 2007, there is no issue to be decided by the jury regarding Tyson's liability for the walking of plaintiffs' *Alvarez*-based walking time claim.

Unlike at summary judgment, the Court will have the foregoing stipulations before it at trial which afford a sufficient basis to decide the issue of compensability that is committed *exclusively* to the Court for decision as a matter of law. The Court did not have the benefit of the foregoing stipulations when it found genuine issues of material fact based on the *pre-stipulation* summary judgment record submitted in this case in July 2010. The parties' summary judgment briefs and submissions were filed well *before* such stipulations were agreed to in the parties' proposed Pretrial

February 4, 2007, K code time was paid only to employees who used a knife, but the number of minutes was **increased** to cover the time spent walking before shift from the locker room to the production floor, and walking after shift from the wash station to the locker room." *Stipulation* no. 40 (Doc. 160-1) (emphasis added). It is undisputed that such walking time was not compensated prior to February 4, 2007. *Id.*

[7] Tyson bought IBP's plant in Pasco, Washington and the current Storm Lake plant in 2001 and proceeded to adopt and apply the same IBP policy that the Supreme Court held to violate the FLSA in *Alvarez*, 546 U.S. at 37, 40. The policy and practice at IBP-Tyson's Pasco, Washington plant described by the Supreme Court at 546 U.S. 30-31 is the same corporate-wide policy and practice applied at IBP-Tyson's Storm Lake plant. The Supreme Court noted that under such policy "[p]ay begins with the first piece of meat and ends with the last piece of meat" and that "[s]ince 1998 . . . IBP has also paid for four minutes of clothes changing time." Tyson has stipulated to these same facts in *Stipulation* nos. 25, 33, 34 and 39 (Doc. 160-1).

Order. *Compare* Doc. nos. 123-129 (summary judgment submissions) *with* Doc . 160-1 (stipulations in proposed Pretrial Order) *and* Doc. 229 (Order adopting Doc. 160-1). Other Courts that have found a genuine issue of material fact have also not had the benefit of the facts stipulated in this case in the Pretrial Order (Doc. 160-1).

As in *IBP v. Alvarez*, 546 U.S. at 37, the Court must resolve Tyson's liability as a matter of law because: (1) Tyson has stipulated that the donning activities which occur before such walking time are compensable (*Stipulation* no. 25 (Doc. 160-1); (2) Tyson has stipulated that it did not pay for such post-donning walking time until February 4, 2007, which was three years after the liability period began February 6, 2004 (*Stipulation* no. 34 at Doc. 160-1); and (3) Tyson began paying for such walking time because of the holding in *IBP v. Alvarez*, 546 U.S. at 37, 40, that such walking time is compensable as a matter of law.[8] The Labor Department's regulation, 29 C.F.R. § 790.6(a), states: "Periods of time between the commencement of the employee's first principal activity and

---

[8]Tyson stipulated in *Lopez* that:

> 39. In 1998, employees at IBP's beef processing facility in Pasco, Washington filed suit to recover unpaid wages for donning- and doffing-related activities, including walking to workstations after donning at the start of the shift, and walking from workstations before doffing at the end of the shift. On November 8, 2005, in that Washington case, the U.S. Supreme Court ruled that pre-shift walking time is compensable as part of the continuous workday if it occurs after the first principal activity of the day, and post-shift walking is compensable as part of the continuous workday if it occurs before the last principal activity of the day.

> 40. **As a result of the Supreme Court's ruling**, which applied to all employers in the country, Tyson conducted further time studies in 2006 to measure walking time. In January 2007, Tyson began paying the employees in its Lexington facility up to 6 additional minutes per day, including walking time.

*Pretrial Order* at p. 8 (*Lopez* Doc. 237) (emphasis added). The same is true here. *See Sager Depo.* at p. 70.

the completion of his last principal activity on any workday must be included in the computation of hours worked."[9]  The Court of Appeals' decision affirmed by the Supreme Court in *Alvarez* held that "[t]here is nothing in the statute or regulations that would lead to the conclusion that a workday may be commenced, then stopped while the employee is walking to his station, then recommenced when the walking is done . . . .   The district court correctly held that Pasco plant work time was continuous, not the sum of discrete periods."  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 907 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005).  Tyson argues that the amount of time already being paid for such activities is sufficient, but that is obviously wrong because ***nothing*** was paid to ***anyone*** for such walking time from the start of the liability period on February 6, 2004 until February 4, 2007.  *See Stipulation* nos. 34 and 40.

The same question of law applies to Tyson's "standard" or "sanitary" gear and equipment, such as the standard-issue frock that Tyson requires to be worn.  As with the walking time decided as a matter of law in *IBP v. Alvarez*, it is undisputed that the frock must be donned *after* Tyson's

---

[9] The Department of Labor has determined that "time spent in those activities, as well as any walking and waiting time that occur after the employee engages in his first principal activity [of donning] and before he finishes his last principal activity [of doffing], is part of a 'continuous workday' and is compensable under the Fair Labor Standards Act (FLSA)."  Advisory Memo. 2006-2, at 1; see Wage and Hour Opinion Letter, 2001 WL 58864, at *2 (Jan. 15,2001) (opinion on the 3(0) issue later withdrawn) ("[U]nder the FLSA and the Portal-to-Portal Act, it is the Department's longstanding position that, as a general matter, compensable hours worked include all time from the moment each employee performs the first principal activity of the employee's workday until the last principal activity is concluded, less any bona fide meal periods or bona fide off-duty time."); *see also*, *Anderson v. Perdue Farms, Inc.*, 604 F. Supp. 2d 1339, 1357 (M.D. Ala. March 10,2009) ("under *Alvarez*, the same rule that applies to walking applies to waiting: if it occurs between the first and last principal activities, it is compensable."); *Jordan v. IBP, Inc.*, 542 F.Supp. 2d, 790, 810 (M.D. TN 2008) ("the acts of donning and doffing the frock serve, respectively, as the beginning and the end of the plaintiffs' compensable workday, and all other activities performed in the interim are compensable under the continuous workday rule."); *Garcia v. Tyson Foods, Inc*., 474 F. Supp. 2d 1240, 1245 (D. Kan. 2007) ("during a continuous workday, any donning and doffing that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is covered by the FLSA.").

protective mesh equipment which goes *underneath* the frock. *See Sager Depo.* at 22. Consequently, such frocks are a compensable part of the "continuous workday" in the same way as the walking time in *IBP v. Alvarez*, 546 U.S. at 37. It is also undisputed that the plaintiffs must necessarily take off their boots and street clothes in order to be able to put on the company-issued white pants and shirts that Tyson requires to be worn in the Kill Department. *See Stipulation* nos. 22-24 (Doc. 160-1). Tyson has also stipulated to the first such compensable acts in *Stipulation* nos. 23 and 25 which establish that the Company's "sanitary" equipment must be laundered at the plant each night and that this requires that "employees go to their lockers at the start of their shift to obtain their individual supply bag in which Tyson has put their sanitary items and equipment that it requires laundering between shifts, such as the company-issued frock, cotton gloves, Polar gloves, and Polar sleeves." Doc. 160-1 at *Stipulation* no. 23. Such "sanitary" gear is donned as a part of an *ensemble* which includes the safety and sanitary items that Tyson has stipulated to be compensable in *Stipulation* nos. 23 and 25 (Doc. 160-1). Stipulation no. 19 establishes that "[h]ourly production workers are **required** to wear a hard hat, a hairnet, a beard net (if they have facial hair), and earplugs or ear muffs while on the production floor." Doc. 160-1 (emphasis added). *Stipulation* no. 21 establishes that "[w]orkers in the Cut and Re-trim processing areas are **required** to wear a fabric frock over their street clothes while on the production floor." Doc. 160-1 (emphasis added). The parties have further stipulated that "[w]orkers are required to be at their work stations on the production floor at their scheduled start time", that they "are not supposed to perform work on the production line without wearing all of the required sanitary and protective items and equipment for their position", and that "[t]hey are disciplined if they are not wearing their required sanitary and protective items and equipment." *Stipulation* nos. 30 and 31 ( Doc. 160-1).

No additional facts are needed for the Court to decide the issue of compensability as a

matter of law. There is no issue of fact to be decided by a jury in light of such stipulations. Even if, *arguendo*, there were some other unstipulated fact that could be identified as essential to deciding such question of law, the jury must be restricted to determining that fact alone (whatever it might be). The jury should not be permitted to go further to decide whether the activities at issue are "compensable" or were fully paid prior to February 4, 2007 because the parties' stipulations already establish such compensability for the items listed in Stipulation no. 25, as well as non-payment of the walking time held to be compensable as a matter of law in *IBP v. Alvarez*, 546 U.S. at 37, 40 and the facts necessary to decide the compensability of the "sanitary" gear and equipment listed in *Stipulation* nos. 18-21, 25 and 31 (Doc. 160-1).

## II.  THE COURT MUST FIRST DECIDE WHAT IS COMPENSABLE AS A MATTER OF LAW BEFORE THE JURY CAN DECIDE WHETHER THOSE COMPENSABLE ACTIVITIES ARE *DE MINIMIS* OR THE AMOUNT OF BACK PAY FOR SUCH ACTIVITIES

The Court must first decide what activities are compensable as a matter of law before a jury can decide whether those particular activities are *de minimis* as an affirmative defense. Tyson's *de minimis* defense cannot be decided in the abstract without reference to the particular activities that the Court has determined to be compensable as a matter of law. A greater number of compensable activities affects not only the amount of time it takes to perform such activities in the "aggregate", but also directly affects whether such compensable activities are "administratively practical" to track and pay and whether they are "regularly" performed. These are the three elements of such a *de minimis* defense. *Lindow v. United States,* 738 F.2d 1057 (9th Cir. 1984). The jury obviously cannot decide Tyson's affirmative defense that the activities determined to be compensable are *de minimis* without first knowing which activities the Court has determined to be compensable.

The same is true of backpay. The Court must first decide which activities are compensable

as a matter of law before the jury can decide the backpay due for such activities. To determine backpay, the jury must find the amount of time that went unpaid or underpaid for the particular activities the Court determines to be compensable as a matter of law. That cannot be done without first knowing what activities the Court has determined to be compensable.

In the absence of the Court first determining the issue of compensability as a matter of law, the jury will necessarily have to invade the province of the Court by deciding that issue for itself in order to be able to decide Tyson's affirmative *de minimis* defense or the issue of backpay. To prevent the jury from invading the province of the Court in attempting to decide what activities are compensable as a predicate for Tyson's *de mimimis* defense, the plaintiffs have requested in the Pretrial Order that the trial be bifurcated so that the Court can first decide the issue of compensability before submission of Tyson's affirmative *de minimis* defense to the jury for decision. As already shown, the parties' stipulations provide the requisite facts for the Court to decide compensability as a matter of law. But if the Court identifies some additional fact that it deems essential to deciding the issue of compensability, the jury should first be required to decide that fact at Stage I of the trial and then immediately return to hear the evidence at Stage II on whether the particular activities the Court determines to be compensable as a matter of law at Stage I are *de minimis* (assuming that Tyson presents sufficient evidence to create a genuine issue of material fact on that affirmative defense), as well as the amount of backpay for those activities that the Court determines to be compensable.

## III. LIABILITY MUST BE BASED ON RECORDS OF ACTUAL HOURS SPENT RATHER THAN ESTIMATES OF "AVERAGE" OR "REASONABLE" HOURS

Contrary to Tyson's position in the Pretrial Order and its proposed jury instructions, liability is based on the Company's failure to pay the time actually spent on the activities determined to be

compensable, not just an abstract "reasonable" or "average" amount of time. *Holzapfel v. Town of Newburgh, NY,* 145 F.3d 516, 528 (2nd Cir. 1998) ("A 'reasonableness' standard is inappropriate in deciding how many overtime hours for which a K-9 officer should be compensated."); *Perez v. Mountaire Farms*, 2011 U.S. App. LEXIS 11547, **37-38 (4th Cir. June 7, 2011) ("We find no merit in this argument [about estimated or reasonable time] because such a method of calculation would not account for the fact that workers of different ages and states of well-being, with varying degrees of agility, are engaged in the performance of these activities."); *Brock v. City of Cincinnati*, 236 F.3d 793, 803 (6th Cir. 2001) ("Courts should not inquire into the reasonableness of the amount of work employees actually performed or determine what would have been a reasonable amount of work for an employer to seek and an employee to perform."); *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 128 (3rd Cir. 1984) (Requiring companies to record actual time spent rather than "estimates" of reasonable time); *Helmert v. Butterball, LLC*, 2011 U.S. Dist. LEXIS 82994, *7 (E. D. Ark. July 27, 2011) ("Under the FLSA, the 'workday' is 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.' *Id.* §790.6(b). 'It includes all time within that period whether or not the employee engages in work throughout all of that period.'"); *Wirtz v. Williams,* 369 F.2d 783, 785 (5th Cir. 1966) (determining that the employer did not comply with the overtime compensation requirements of the FLSA when the employer did not record the actual amount of time its truck drivers spent en route but rather estimated how much time each trip should take). The *Lopez* plaintiffs have appealed Judge Strom's jury instruction that "only the time reasonably spent is compensable." *See Lopez* instructions 15 & 17.

Tyson's Storm Lake plant is already subject to the following permanent injunction requiring it to "implement recordkeeping practices sufficient to record **the time spent by each employee** in performing the pre-shift and post-shift activities found to be compensable under the Act." *Reich v.*

*IBP, Inc.*, permanent injunction entered July 30, 1996 (emphasis added); *see also Reich v. IBP, Inc.,*

1996 WL 137817 (D. Kan. 1996), *affirmed sub nom.*, *Metzler v. IBP, Inc.*, 127 F.3d 959 (10th Cir.

1997). The injunction provides:

> On March 31, 1996, the Court issued its Memorandum and Order, holding that Defendant had violated and is continuing to violate the overtime and recordkeeping provisions of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §201, *et seq.*:
>
> Pursuant to that Memorandum and Order, it is hereby:
>
> ORDERED, ADJUDGED and DECREED that Defendant, its officers, agents, servants, employees, and those persons in active concert or participation with it who receive actual notice of this judgment be, and each of them hereby is, **permanently enjoined** and restrained from violating the provisions of sections 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 , as amended (29 U.S.C. § 201 *et seq.*), hereinafter called the Act, at its meatpacking establishments located in . . . Storm Lake, Iowa . . . , in any of the following manners:
>
> 1. Defendant shall not, contrary to sections 7 and 15(a)(2) of the Act, employ any of its employees . . . for workweeks longer than 40 hours without compensating such employee for his or her employment in excess of 40 hours per workweek at a rate not less than one and one-half times the regular rate at which he or she is employed.
>
> * * *
>
> 3. It is further ORDERED that, within ten (10) days of the date of this Order, Defendant shall implement recordkeeping practices sufficient to record **the time spent** by **each employee** in performing the pre-shift and post-shift activities found to be compensable under the Act.

*Reich v. IBP, Inc.*, permanent injunction entered July 30, 1996 (emphasis added); *see also Reich v.*

*IBP, Inc.,* 1996 WL 137817 (D. Kan. 1996), *affirmed sub nom.*, *Metzler v. IBP, Inc.*, 127 F.3d 959

(10th Cir. 1997).

At least three courts have held that the foregoing injunction requires employers to pay

employees for their actual time spent performing company-required donning, doffing, walking and

sanitizing, not mere "average" or "reasonable" time. *Helmert v. Butterball, LLC*, 2011 U.S. Dist.

15

LEXIS 82994, **28-30 (E. D. Ark. July 27, 2011); *Jordan v. IBP, Inc.*, 2004 U.S. Dist. LEXIS

30490, 2004 WL 5621927, at *13 (M.D. Tenn. Oct. 12, 2004); *Garcia v. Tyson Foods, Inc.*, 474 F.

Supp. 2d 1240, 1248 (D. Kan. 2007). The *Jordan* Court explained that such injunction does not

permit reasonable rather than actual time spent on compensable activities.

> The court's method of reaching the "reasonable average" does not
> suggest that reasonable time spent in a compensable activity and
> actual time spent in a compensable activity are mutually exclusive
> concepts, nor does it absolve IBP from recording and compensating
> employees for actual time spent in these activities. Rather, the court
> observed that "[d]efendant will be required to record and compensate
> for time spent in compensable activities under its present working
> conditions." [citation omitted] Furthermore, the injunction explicitly
> states that "Defendant shall implement recordkeeping practices
> sufficient to record the time spent by *each* employee in performing
> the pre-shift and post-shift activities found to be compensable under
> the Act." (Docket No. 60, Ex. 9, Injunction ¶ 3) (emphasis added).
> Nowhere in the injunction does the court limit the payment to
> "reasonable" time, and the context of the court's pronouncements
> suggest[s] that the court intended employees to be paid only for
> "reasonable" time where the employer had not recorded actual time
> spent, but that, in the future, the employer was still obligated to
> devise a way to record and pay for the actual time spent in these
> activities. For these reasons, the court is not convinced that the *Reich*
> injunction merely requires IBP to compensate employees for
> reasonable time spent in the activities as a prospective matter.

*Jordan*, 2004 U.S. Dist. LEXIS 30490, 2004 WL 5621927, at *13; *see also Helmert*, 2011 U.S. Dist.

LEXIS 82994 at **28-30.

Tyson has stipulated that it has not kept records of plaintiffs' actual time and instead has only

paid what it determined for itself to be "average" or "reasonable" time. Doc. 160-1. *Stipulation* no.

29 establishes that "[a]lthough the time clocks record the time that hourly workers punch the clock

to the minute, Tyson does not use such recorded time to determine an employee's compensable hours

or pay. The time clocks are generally used to record attendance." Doc. 160-1. It is undisputed that

Tyson has paid only the "average times" that it unilaterally deemed to be reasonable in a 1998 time

study and a 2006 supplement to that time study. *See Stipulation* nos. 29, 33-38 (Doc. 160-1).

The Second Circuit has explained why "reasonable" time is inconsistent with the FLSA and its implementing regulations which require recording of the actual time spent by employees: "The flaw in this approach is that the word 'reasonable' is not found in the definition of 'work.'" *Holzapfel*, 145 F.3d at 523. The Fourth Circuit has recently reached the same result, rejecting a "reasonable" time restriction on the continuous workday and requiring "actual time" instead. *Perez v. Mountaire Farms, Inc.*, 2011 U. S. App. LEXIS 11547, \*\*37-38 (4th Cir. June 7, 2011). The Court held that "[u]nder the continuous workday rule, therefore, the employees are entitled to compensation for those activities and any other activities, such as sanitizing and walking, which occur between the first and last principal activities." *Id.* It then held that such "compensable time" is not calculated "by adding together the minimum amounts of time expended by the best-performing employee in completing such activity" because "[w]e find no merit in this argument because such a method of calculation would not account for the fact that workers of different ages and states of well-being, with varying degrees of agility, are engaged in the performance of these activities." The Third Circuit has similarly rejected "estimates" of reasonable time rather than recordkeeping of actual time, holding that "[e]stimating hours worked . . . violates section 11(c) of the FLSA, 29 U.S.C. §211(c), which requires employers to maintain accurate records to ensure that all workers are paid . . . for every hour worked." *Williams*, 747 F.2d at 128.

A recent decision by another district in this Circuit has reached the same result, explaining that:

> It is undisputed that Butterball compensates its employees for six minutes per day for donning and doffing, regardless of the amount of time that the employees actually spend doing so.
>
> \* \* \*
>
> It is clear from the Supreme Court's decision in *Alvarez* that

employers are to record and pay employees for **actual hours worked** – in other words, all of the time between an employee's first principal activity and last principal activity that is not otherwise excluded under the Act.

\* \* \*

Under the recording requirements of the FLSA, employers must "maintain and preserve payroll or other records containing . . . [h]ours worked each workday and total hours worked each workweek . . . ." 29 C.F.R. § 516.2 (2011). In other words, an employer must "keep track of the working hours of each employee that falls under the Act." *Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 779 (8th Cir. 2009) (citing 29 C.F.R. § 516.2). In *Reich v. Cole Enterprises, Inc.*, the court held that an employer who kept a record of the shifts that its employees worked instead of the exact time the employees started and stopped working each day violated these recording requirements by failing to maintain records of the *actual* hours that its employees worked. 901 F. Supp. 255, 258-60 (S.D. Ohio 1993). If the law requires that an employer record the hours that each employee works, the reason for that requirement must be that the employer must compensate the employees on the basis of those recorded hours.

*Helmert*, 2011 U.S. Dist. LEXIS 82994, \*\*22, 23, 25, fn.9 (E. D. Ark. July 27, 2011) (emphasis added).

Tyson's proposed restriction to reasonable time is at odds with the FLSA's requirement that employees be compensated for "**all time** during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson v. Mt. Clemens Pottery Co.,*328 U.S. 680, 690-691 (1946) (emphasis added); *see also IBP v. Alvarez*, 546 U.S. at 25; 29 C.F.R. 785.7; 29 C.F.R. 790.6(a). This rule is based on the Congressional intent that employees should be paid for "all time" that they are subject to the direction or control of the employer. *See Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). The Supreme Court has recently held that the Portal Act did not change the holdings in these cases that compensable time includes "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.'" *IBP v. Alvarez* 546 U.S. at 25) (quoting *Mt.*

18

*Clemens*, 328 U.S. at 690-691).

The very purpose of the continuous workday rule adopted by the Supreme Court and the Department of Labor is to preclude employers from picking apart the compensable workday by paying only for those tasks or events that it deems to have been "reasonably" or "efficiently" performed. Reasonableness or inefficiency are *disciplinary matters* directed to the offending employee, not a basis for deciding what is compensable under the FLSA as a matter of law. Compensability does not vary according to whether a particular employees efficiently or reasonably perform the work at issue.  As held in *Helmert v. Butterball*, "the employer has the authority to manage its employees' continuous workday so as to avoid idle wait time. Butterball can control when its employees' arrive to and leave from the plant and the activities they engage in while at the plant. If Butterball does not want its employees to don gear before going to the cafeteria or restrooms, it can instruct them accordingly." *Helmert*, 2001 U.S. Dist. LEXIS 82994 at **38-39. The Court explained the obvious when it held that:

> Butterball makes a pragmatic argument against this interpretation of the continuous workday doctrine. Butterball contends that, if all of the time during the continuous workday is compensable, then an employee could arrive at the plant long before the shift begins, engage in a principal activity, sit idly in the cafeteria until the shift begins, and then demand compensation for that time. Although this is a legitimate concern, it is not a basis for avoiding the continuous workday doctrine. According to the FLSA regulations,
>> [I]t is the duty of management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.
>
> 29 C.F.R. § 785.13. Butterball, as the employer, has the authority to manage its employees' continuous workday so as to avoid idle wait time. Butterball can control when its employees' arrive to and leave from the plant and the activities they engage in while at the plant. If

Butterball does not want its employees to don gear before going to the cafeteria or restrooms, it can instruct them accordingly.

*Helmert*, 2011 U.S. Dist. LEXIS 82994 at **38-39. Tyson has these same managerial powers.

Thus, actual recorded time rather than reasonable or average times is required for purposes of establishing compliance with the FLSA. This does not mean, however, that backpay cannot be based on reconstructed time in circumstances where the employer has failed to maintain the requisite records of the actual time spent. Tyson bears the burden of proof on the issue of how much compensable time went uncompensated. *Dole v. Tony and Susan Alamo Foundation*, 915 F.2d 349, 351 (8th Cir. 1990) ("once the plaintiff has produced evidence of uncompensated labor '[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)); *Donovan v. Tony and Susan Alamo Foundation*, 722 F.2d 397, 403-404 (8th Cir. 1984) ("[I]t is the employer who is charged with the duty of record-keeping so that the amount of work performed and compensation earned may be calculated with precision. An employer failing to comply with this duty cannot complain if the record is deficient and the court must resort to a reasonable approximation in computing the amount of damages awarded."); *Herman v. Kramer*, 1998 U.S. App. LEXIS 23329, *7 (1998), 163 F.3d 602 (8th Cir. 1998) ("When an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented.") (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)); *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997) ("When an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented", quoting *Martin v. Tony & Susan Alamo Found.*, 952 F.2d 1050, 1052 (8th

20

Cir.), *cert. denied*, 505 U.S. 1204 (1992) and citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687(1946)).

Different standards apply once the defendant fails to maintain the requisite records of actual time spent on the work at issue. *Id.* The Eighth Circuit has held that:

> The solution to the problem presented "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" is not to "penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying the compensation as contemplated by the Fair Labor Standards Act. In such a situation **we hold that an employee has carried out his burden** if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence **of the precise amount of work** performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

*Donovan v. Tony and Susan Alamo Foundation*, 722 F.2d 397, 404 (8th Cir. 1984) (emphasis added).

The Court in *Helmert* also considered the effect of the *Reich v. IBP* injunction on the issue of backpay in circumstances where the employer fails to maintain the requisite records of actual time spent on the activities determined to be compensable:

> In a case such as this one, it is impossible to determine the actual time that each plaintiff spent in compensable donning-and-doffing-related activities over a two or three year period **when the employer failed to keep a record of that time.** *Cf. Alvarez*, 339 F.3d at 914 (upholding the district court's compensation measure based on "reasonable" time, "thereby avoiding countless individual plaintiff-specific quagmires while directing the parties to individualize the damage measure to the extent possible nevertheless"). More often than not, such awards may be based on a reasonable estimate of the

21

time that employees were engaged in the compensable activities.

However, those cases do not stand for the proposition that under the FLSA employers need not compensate employees for all of the time that they actually worked. In *Reich v. IBP, Inc.*, the Secretary of Labor brought an action against IBP alleging that it had violated the overtime and recordkeeping provisions of FLSA. 820 F. Supp. 1315, 1318 (D. Kan. 1993). In the first phase of a bifurcated trial, the district court found that employees "were entitled to compensation for reasonable, rather than actual, time required" to don and doff protective gear. *Jordan v. IBP, Inc.,* No. 3:02-1132, 2004 U.S. Dist. LEXIS 30490, 2004 WL 5621927, at *1 (M.D. Tenn. Oct. 12, 2004) (citing *Reich*, 820 F. Supp. at 1329).

\* \* \*

After the second phase of trial, the court concluded that a company-wide injunction was appropriate. *Reich v. IBP, Inc.*, Civ.A. No. 88-2171-EEO, 1996 U.S. Dist. LEXIS 11283, 1996 WL 445072, at *1 (D. Kan. Jul. 30, 1996). The injunction ordered IBP to implement within ten days recordkeeping practices that would record the time spent by each employee in performing compensable pre-shift and post-shift activities. *Id.* On appeal, the Tenth Circuit upheld the injunction. *Metzler*, 127 F.3d at 965. Discussing the *Reich* cases, one district court opined:

\* \* \*

Although damages may be awarded on a reasonable basis, as explained in *Jordan v. IBP, Inc.*, **the FLSA requires employers to compensate their employees for actual hours worked**.

\* \* \*

In each of its arguments against recording and paying employees for their actual hours of work, Butterball fails to make a critical distinction: while a back pay award may be based on a reasonable estimate of the actual time spent in donning and doffing when the employer has failed to record actual time, an employer may not compensate employees based on the amount of time a reasonably efficient employee would spend donning and doffing if the actual time is greater and the result is that the compensation falls below the minimum wage and overtime requirements of the FLSA.

*Helmert*, 2011 U.S. Dist. LEXIS 82994 at **26-30, *35 (emphasis added). The foregoing permanent

injunction in *Reich* is the one that specifically applies to the current Storm Lake plant.

## CONCLUSION

For all the foregoing reasons, the Court should decide the issue of what activities are

compensable as a matter of law at Stage I of a bifurcated trial based on the parties' stipulated facts set forth in the Pretrial Order. If the Court determines beforehand that there is a particular fact that is essential to such determination which has not been stipulated, the jury should determine that particular subsidiary fact at Stage I and then immediately return to hear evidence at Stage II on: (1) whether the activities the Court found to be compensable at Stage I are *de minimis*; and (2) the amount of backpay due for such compensable activities.

Respectfully submitted,

Brian P. Mccafferty
Kenney & McCafferty
3031 C Walton Road, Suite 202
Plymouth Meeting, P A 19462
(610) 940-0327
(610) 940-0284 (facsimile)

/s/ Robert L. Wiggins, Jr.
Robert L. Wiggins
Candis A. McGowan
Jacob A. Kiser
Daniel Arciniegas
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (facsimile)

Michael Hamilton
Provost Umphrey Law Firm, LLP
2021 Richard Jones Road, Suite 300
Nashville, TN 37215
(615) 242-0199
(615) 256-5922 (facsimile)

Roger K. Doolittle
460 Briarwood Drive, Suite500
Jackson, MS 39206
(601) 957-9777
(601) 957-9779 (facsimile)

Kathryn M.Engdahl
Metcalf, Kaspari, Engdahl & Lazarus, P.A.
333 Parkdale Plaza, 1660 South Highway 100
Minneapolis, MN 55416-1573
(312) 239-0524
(800) 845-1962 (facsimile)

Attorneys For Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing on counsel via electronic mail delivery of same, properly addressed, to the following:

Allison Dana Balus
Baird Holm, LLP
1500 Woodmen Tower
Omaha, NE 68102

David J. Kramer
Baird Holm LLP
1500 Woodmen Tower
Omaha, NE 68102

Evangeline C. Paschal
Hunton & Williams, LLP
2200 Pennsylvania Ave., N.W,
Washington, DC 20037

Michael J. Mueller
Hunton & Williams LLP
2200 Pennsylvania Ave N.W.
Washington, DC 20037

Emily Burkhardt Vicente
Emily L. Aldrich
Hunton & Williams, LLP
550 South Hope Street, Suite 2000
Los Angeles, CA 90071

Steven D. Davidson
Baird Holm McEachen Pedersen
Hamann & Strasheim
1500 Woodmen Tower
Omaha, NE 68102

Richard J. Sapp
Ryan Koopmans
Frank B. Harty
Nyemaster, Goode,
Hansell & O'brien, P.C.
700 Walnut Street, Suite 1600
Des Moines, IA 50309-3899

This 6th day of September, 2011.

/s/ Robert L. Wiggins, Jr.