# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| PEG BOUAPHAKEO, et al., individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>TYSON FOODS, INC.,<br><br>        Defendant. | No. 5:07-cv-04009<br><br><br>**ORDER** |

      This matter comes before the Court on Defendant's motion for a judgment as a matter of law and motion to decertify or, in the alternative, for a new trial on damages, filed on October 24, 2011. [Dkt. No. 305]. Plaintiffs filed their resistance to Defendant's motion on November 15, 2011. [Dkt. No. 310]. Defendant replied to Plaintiffs' resistance on December 1, 2011. [Dkt. No. 313]. For reasons more fully explained below, the Court denies Defendant's motion.

I. FACTUAL BACKGROUND

      These motions stem from a five-year dispute between the parties that culminated in a two-week trial in Sioux City, Iowa in September of 2011. The Plaintiffs are all current or former employees of Defendant at their Storm Lake, Iowa facility. All Tyson production workers at the Storm Lake plant wear at least some items of personal protective equipment ("PPE"), which includes hard hats, ear plugs, boots, frocks, hair nets, hard plastic arm guards, mesh aprons, mesh sleeves or Kevlar sleeves, scabbards, cotton gloves, rubber gloves, cut-resistant (Kevlar) gloves, and mesh gloves.

      Tyson Storm Lake hourly production workers must have all required and cleaned PPE on before the first piece of meat product reaches their work station on the assembly

line. Employees are not permitted to perform work on the production line without wearing all required PPE, and they are disciplined if they are not wearing their required PPE. Tyson pays its Storm Lake hourly production workers, in part, on a "gang time" basis. "Gang time" is the time that the processing lines are moving and during which production workers are physically at the assembly line while the lines are moving and producing product. In and of itself, "gang time" does not record time that production workers spend donning, doffing, and cleaning themselves and their PPE before and after "gang time" and at unpaid meal breaks. In addition to "gang time" Tyson pays its hourly production workers "extra" minutes per day to compensate them for donning, doffing, and washing their PPE. The payment of "extra" minutes beyond the "gang time" for donning and doffing activities is referred to as "K-Code" time.

The parties have long disputed whether or not this K-Code time adequately compensates employees for the time they spend donning and doffing their PPE. In February 2007 Plaintiffs filed suit against Defendant alleging violations of the Fair Labor Standards Act and the Iowa Wage Payment Collection law. Both a collective action under the Fair Labor Standards Act and a Rule 23 class were certified in this matter, and the case proceeded as a collective and class action. In September of 2011 a jury trial was held among the parties to resolve these issues. After the parties presented evidence to the jury for nine days, the case was submitted to the jury on September 23, 2011. The jury returned with a verdict on September 26, 2011. The jury found that the plaintiffs proved that the time spent donning and doffing their PPE was "work" within the meaning of the Fair Labor Standards Act; that this "work" was "integral and indispensable" to the employees' gang-time work; that the meal break was a bona fide meal period; that the donning and doffing activities at issue in the case were not "de minimis," and that the plaintiffs proved that they were entitled to additional compensation for their donning and doffing activities. The jury awarded $2,892,378.70 in damages to the Plaintiffs.

II. LEGAL STANDARD

a. Judgment as a Matter of Law

"Judgment as a matter of law is only appropriate when no reasonable jury could have found for the nonmoving party." *S. Wine and Spirits of Nev. v. Mountain Valley Spring Co., LLC*, 646 F.3d 526, 534 (8th Cir. 2011) (citing *Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 860 (8th Cir. 2002)). In the Court's analysis, "we may not weigh the credibility of evidence, and conflicts in the evidence must be resolved in favor of the verdict." *Id.* (citing *Schooley v. Orkin Extermination, Co., Inc.*, 502 F.3d 759, 764 (8th Cir. 2007)). If no evidence supports the nonmoving party—that is, if all the evidence points in favor of the moving party—then the Court may grant a motion for judgment as a matter of law. *Johnson v. Texarkana Ark. Sch. Dist. No. 7*, Slip Copy, 2012 WL 527907, at *1 (W.D. Ark. February 16, 2012).

"Where conflicting inferences reasonably can be drawn from the evidence, it is the role of the jury, not the court, to determine which inferences shall be drawn." *Hunt v. Neb. Pub. Power Dist.*, 282 F.3d 1021, 1029 (8th Cir. 2002). Therefore, it is inappropriate for this Court to overturn a jury verdict "unless, after giving the nonmoving party the benefit of all reasonable inferences and resolving all conflicts in the evidence in the nonmoving party's favor, there still exists a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party." *Id.* (internal quotation omitted).

b. New Trial

This Court may order a new trial only under the circumstances where a "miscarriage of justice" would occur without one. *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992) ("When through judicial balancing the trial court determines that the first trial has resulted in a miscarriage of justice, the court may order a new trial, otherwise not." *Id.*) "A new trial may not be granted on the grounds that a jury's verdict is excessive unless the court concludes that the jury's verdict

is a plain injustice or a monstrous or shocking result." *Stafford v. Neurological Med., Inc.*, 811 F.2d 470, 475 (8th Cir. 1987) (internal quotations omitted).

III. DISCUSSION

In this case it cannot be said that no reasonable juror could have found for the Plaintiffs, or that the jury's verdict was a monstrous or shocking result.  Defendant argues that the evidence at trial was not sufficient to support liability because Plaintiffs failed to show that each individual employee had not already been fully compensated for any overtime hours they worked.  However, Plaintiffs called two experts to help determine both liability and damages.  Dr. Kenneth Mericle conducted a time study at Defendant's facility and determined how much time Plaintiffs spent donning and doffing their PPE.  Dr. Leisle Fox used these numbers to calculate the amount of money owed to each Plaintiff for these activities.  Dr. Fox did this by creating a database that included all Plaintiffs.  [Tr. Ex. 349].  In this database, she made calculations for each Plaintiff individually by subtracting what was already paid to the employee in K-code time or determining if the employee was not owed extra payment for the week because their work did not exceed 40 hours and calculated what was owed to them on a week-by-week basis.

Additionally, Plaintiffs provided evidence from several opt-in plaintiffs, as well as Tyson employees, who testified to the general practices of employees regarding the donning and doffing of PPE. This included which PPE items were used by different groups of employees—including knife-wielders and non-knife-wielders—how often people donned and doffed these items, how these items were stored, cleaned, and sanitized, and how long it generally took for people to don and doff the items.  Also included in the evidence was testimony regarding Defendant's practice of paying on the "gang time" system and adding K-code time to individual employees' paychecks in order to compensate them for the time the company believed it should take the employees to don and doff their PPE.  Witnesses also testified that Plaintiffs spent more time donning and doffing their PPE than Defendant paid them in K-code time.

The Court finds this evidence was sufficient for the jury to conclude that Defendant was liable for violating the Fair Labor Standards Act and the Iowa Wage Payment Collection Law,

and that it was also sufficient for their damages calculations.  It is not the role of the Court to attempt to divine the motivations of the jury or to determine the precise calculations of the damages they awarded.  *See LeSueur Creamery, Inc. v. Haskon, Inc.*, 660 F.2d 342, 354 (8th Cir. 1981) ("The trial judge is not free to speculate as to the reasons for the jury's verdict." *Id.*)  Instead, the Court must only look to see if there was sufficient evidence in the record from which the jury could make the determinations they did.  Plaintiffs provided sufficient evidence in the form of witness testimony and the expert calculations of Dr. Mericle and Dr. Fox.  In this case, there is not a complete absence of probative facts to support the conclusion, nor did a miscarriage of justice occur.  The Court concludes that the Defendant failed to meet the heavy burden the law requires to overturn a jury's verdict and award of damages.

IV. CONCLUSION

Upon the foregoing,

IT IS ORDERED that Defendant's Motion for a Judgment as a Matter of Law and Motion to Decertify or, in the alternative, for a New Trial on Damages [Dkt. No. 305] is DENIED.

DATED this 26th day of September, 2012.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA