IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| PEG BOUAPHAKEO, MARIO MARTINEZ, JAVIER FRAYRE, HERIBENTO RENTERIA, JESUS A. MONTES, and JOSE A. GARCIA, individually and on behalf of others similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>TYSON FOODS, INC.,<br><br>        Defendant. | No. 5:07-cv-04009-JAJ<br><br><br><br><br><br>**ORDER** |

This matter comes before the Court pursuant to the Supreme Court of the United States' March 22, 2016 decision, in which the Supreme Court held that the District Court properly certified and maintained the class in this class action. *Tyson Foods, Inc., v. Bouaphakeo*, 136 S.Ct. 1036, 1045–50 (2016). In that appeal, Tyson also challenged the validity of the jury's aggregate damages award "on the assumption that the damages award cannot be apportioned so that only those class members who suffered [a Fair Labor Standards Act] violation recover." *Id.* at 1049. The Supreme Court held that the question was not fairly presented because the damages award had not yet been disbursed, and the record did not describe the intended disbursal mechanism. *Id.* The Supreme Court acknowledged that it might be possible to craft an acceptable disbursal mechanism "by working backwards from the damages award," but remanded to the District Court for consideration of "[w]hether this or some other methodology will be successful in identifying uninjured class members . . . ." *Id.* at 1050 (noting Tyson "may raise a challenge to the proposed method of allocation when the case returns to the District Court"); *see also id.* at 1053, Roberts, C.J., concurring ("But because we do not know how much donning and doffing time the jury found to have occurred in each department, we have no way of knowing which plaintiffs failed to cross that 40-hour threshold."). In closing, the majority opinion noted:

> Finally, it bears emphasis that this problem appears to be one of [Tyson's] own making. [The employees] proposed bifurcating between the liability and damages phases of this proceeding for the precise reason that it may be difficult to remove uninjured individuals from the class after an award is rendered. It was [Tyson] who argued against that option and now seeks to profit from the difficulty it caused. Whether, in light of the foregoing,

any error should be deemed invited, is a question for the District Court to address in the first instance.

*Id*. at 1050.

On remand, this Court ordered the parties to brief their recommendations as to how the Court should proceed on the remaining issues. [Dkt. 403] Tyson argues that the jury verdict must be invalidated and a new trial awarded on liability and damages; Tyson also argues that until judgment is entered in the new trial, Plaintiffs are not entitled to the aggregate award, interest or fees. [Dkt. 413] Plaintiffs argue the jury verdict must remain intact, that no uninjured individuals will receive damages, and propose two disbursal mechanisms. [Dkt. 411, 417]

## **PLAINTIFFS' ARGUMENTS**

Plaintiffs argue: (1) the jury's verdict must be construed in light of the instruction that damages must not be awarded to uninjured parties; and (2) there are no uninjured class members included in the jury's aggregate damages award. [Dkt. 411, 417] Plaintiffs then present two distribution methods consistent with both the jury verdict and the Supreme Court's decision. [Dkt. 412-2, Declaration of Liesl M. Fox, Ph.D.; Dkt. 415-1, Supplemental Declaration of Liesl M. Fox, Ph.D.]

***The Jury Verdict.*** Plaintiffs argue it is this Court's responsibility to respect the jury's verdict if at all possible. [Dkt. 411] Precedent from both the Supreme Court and the Eighth Circuit requires district courts to: (1) construe the jury's verdict pursuant to the jury instructions; and (2) if any ambiguity exists, resolve ambiguities in favor of the jury's verdict. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Phenix Fed. Sav. & Loan Ass'n, F.A. v. Shearson Loeb Rhoades, Inc.*, 856 F.2d 1125, 1129 (8th Cir. 1998). Here, the Court instructed the jury, "[y]ou may not award damages to non-testifying members of the class unless you are convinced by the preponderance of the evidence that they have been underpaid" and "[a]ny employee who has already received full compensation for all activities you may find to be compensable is not entitled to recover any damages." [Dkt. 277] Further, the Supreme Court recognized, "[t]he jury was instructed that nontestifying members of the class could only recover if the evidence established they 'suffered the same harm as a result of the same unlawful decision or policy.'" *Bouaphakeo*, 136 S.Ct. at 1044.

***The Aggregate Damages Award, "Uninjured" Class Members, and Distribution of the Award.*** Plaintiffs' expert, Liesel Fox, Ph.D., states that the aggregate damages awarded by the jury are automatically limited to injured class members because only class members who worked

more than 40 hours and had more than $50 in damages are included in the damages award. [Dkt. 412-2; Dkt. 415-1]

When these eligibility tests are applied to the class, the class only includes individuals who worked more than 40 hours without adding minutes from Dr. Mericle's calculations. Dr. Fox breaks down the class members and their inclusion in the damages award as follows:

> 2,722 Included in the aggregate damages because they had more than 40 hours without adding Dr. Mericle's extra minutes.
> 223 Not included in the aggregate damages because they had less than 40 hours even with Dr. Mericle's extra minutes.
> 337 Not included in the aggregate damages because they had more than 40 hours but less than $50 minutes in lost wages resulting.
> 61 Not included in the aggregate damages because they had less than 40 hours on their own without adding any of Dr. Mericle's extra minutes and had less than $50 even with the addition of Dr. Mericle's full number of minutes.
> 1 Included in the aggregate damages before the jury's verdict was entered because he had more than 40 hours and more than a $50 loss with the addition of Dr. Mericle's extra minutes, but not included in the reduced aggregate damages at trial because he had a less than $50 loss. (Nyachot Jal).
>
> 3,344 Total Class Members.

[Dkt. 411] Mr. Jal—would have had more than 40 hours in a week without the addition of Dr. Mericle's time and more than $50 in damages—is eliminated from eligibility due to the jury's reduction in the damages award, which lowered his damages below the $50 threshold. *Id.*

As a preliminary matter Dr. Fox explained that, at trial, her calculation of Plaintiffs' proposed damages award included Dr. Mericle's donning and doffing times for 3,344 class members including meal-adjacent donning and doffing. *Id.* Because the jury did not award damages for meal-adjacent donning and doffing, the only way for any damage calculation to comply with the verdict is to remove meal-adjacent donning and doffing times. *Id.* Dr. Mericle included an average of 3.18 minutes pre- and post-meal donning and doffing in the Fabrication Departments, and an average of 3.36 minutes pre- and post-meal donning and doffing in the Kill Departments. *Id.* Once these minutes are removed from Dr. Mericle's total number of daily minutes, Dr. Fox's damages award is calculated using 13.55 minutes per shift for the Fabrication Departments (16.73 – 3.18 = 13.55) and 17.47 minutes per shift for the Kill Departments (20.83 – 3.36 = 17.47). *Id.* Adjusting damages calculations in this way lowers Dr. Fox's recommended damages award to $4,478,799.24 and decreases the number of injured class members who are also eligible to receive damages under the agreed-upon restrictions. *Id.* (see above for breakdown). Each of the remaining class members worked at least 40 hours for at least one week before the

3

addition of Dr. Mericle's time and is owed at least $50. *Id.* Dr. Fox presents two methods of distribution for the aggregate award that are consistent with the jury's verdict and the Supreme Court's decision. [Dkt. 412-2; Dkt. 415-1]

The first method limits the distribution to the weeks in which each injured class member had more than 40 hours without aid of any extra minutes from Dr. Mericle's time study. [Dkt. 412-2; Dkt. 415-1] Of the $4,748,799.24 in damages calculated when meal-adjacent activities are removed, $4,497,904.10 is owed for those weeks where class members worked at least 40 hours before Dr. Mericle's time was added. *Id.* If the aggregate verdict were distributed to the 2,722 class members for those weeks where class members worked 40 hours before Dr. Mericle's time was added, the jury's aggregate verdict of $2,892,378.70 would be 64.305% of the damages Dr. Fox calculated for those weeks. *Id.* Therefore, damages for each class member can be determined by multiplying the original recommended damages by 64.305% for only those weeks where the class member worked at least 40 hours before any additional time was added. *Id.* If distributed this way, the 2722 class members are owed $2,892,377.28. *Id.* (of the two methods, the first one results in a distribution amount closest to the total jury award). The second method limits distribution to the weeks in which each injured class member had more than 40 hours, including weeks in which extra minutes are added that are consistent with the jury's verdict. *Id.* Due to mathematical rounding, the second method results in an aggregate damages amount higher than that of the jury award. *Id.*

Plaintiffs refute two of Tyson's primary arguments against the validity of the jury award. [Dkt. 411, 417] First, Tyson argues that without any indication of how many minutes for which the jury awarded damages, there can be no valid distribution method. [Dkt. 413] Plaintiffs summarize why Tyson's argument fails:

> [T]he number of remedial minutes that the jury adopted as the basis for its damage award is irrelevant because the aggregate damages are already restricted to injured class members through the $50 test for inclusion in such an award. Because Tyson blocked bifurcation that would have allowed the jury to determine the number of minutes it found to be reasonable, the jury necessarily had to determine damages on the basis of the evidence before it[,] which was expressed in terms of dollars rather than minutes. Dr. Fox has shown that the jury was successful in limiting its dollar-based verdict to uninjured class members as it was instructed to do. That fact concludes the inquiry remanded by the Supreme Court.

[Dkt. 411] Second, Plaintiffs refute Tyson's argument that the jury's lesser damages award "pushes" some class members into the uninjured category:

4

> The fact that class members failed to satisfy the 40 hour and $50 eligibility tests when credited with Dr. Mericle's full number of minutes precludes any possibility that the jury's lesser amount of damages could have "pushed" any such class members into the category of persons who were never injured because they worked less than 40 hours a week.

*Id*.

## DEFENDANT'S ARGUMENTS

Tyson argues that on remand, the Supreme Court has instructed this Court to "determine . . . whether there are uninjured class members who are not entitled to recover damages, such that the jury's verdict cannot stand." [Dkt. 413] Tyson stands on Dr. Fox's statement "at trial that any jury award less than their demand submitted to the jury causes an unknowable, but non-proportional increase, in the number of uninjured class members." *Id*. "Because no one knows how many 'minutes' the jury thought the activities took in Kill and Processing, it is unclear which of the 3,344 class members have not established liability for unpaid overtime." *Id*. Tyson then "deconstructs" the jury's aggregate damages award in multiple ways to illustrate its core proposition that: (1) because there are multiple plausible versions of the jury's logic leading to its verdict, it is impossible to ensure only injured plaintiffs participate in the aggregate award, and the verdict cannot stand; and (2) "because the issue of damages is so intertwined with the question of liability, the Seventh Amendment requires the Court to order a new jury trial on both liability and damages." *Id*. Tyson also argues that until judgment has been entered in a new trial, Plaintiffs are not prevailing parties and cannot recover post-judgment interest or requested fees. *Id*. Tyson further states that rather than opposing Plaintiffs' request to bifurcate the trial, it warned the Court of the uninjured class member problem in its pretrial decertification motion and post-trial objection to the jury verdict. *Id*.

## CONCLUSIONS OF LAW AND METHOD OF DISBURSAL

***The Aggregate Award Does Not Include "Uninjured" Individuals.*** A violation of the Fair Labor Standards Act ("FLSA") occurs when a covered employee works more than 40 hours in a week and does not receive compensation for the excess time worked "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). In this case, the parties agreed to further "filters" in order to ensure uninjured individuals do not receive any of the jury's aggregate award. First, individuals who did not reach 40 hours in a week without

the aid of Dr. Mericle's additional donning and doffing minutes have been excluded from the award. Thus, those individuals who could not have worked uncompensated overtime and are therefore uninjured have been eliminated from the aggregate damages award as detailed by Dr. Fox. Second, even those individuals who worked 40 hours in a week and are owed damages through the addition of Dr. Mericle's minutes recover damages only if they are owed at least $50. According to Dr. Fox's declaration, if damages are distributed to the 2,722 class members as described above, individual damages would range from $15.34 to $5,160.88. There are 199 individuals within that group who are owed less than $50—those individuals are not uninjured, rather, they are exempt from the award by agreement of the parties. The less-than-$50 "buffer zone" further ensures that uninjured individuals will not receive damages by withholding damages from lesser-injured parties. Finally, by choosing to award any damages in light of the jury instructions regarding compensation of uninjured parties, the jury reinforced the "injured" status of the class members.

***Tyson Invited Any Uncertainty.*** The FLSA also requires employers to "make, keep, and preserve . . . records of the persons employed by him and of the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Tyson failed to keep records of donning and doffing time, leading to the necessity of using averages developed by Dr. Mericle to prove the FLSA violation. *Bouaphakeo*, 136 S.Ct. at 1043. The Supreme Court allowed Dr. Mericle's averages to be used by the employees because:

> [W]hen employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the "remedial nature of [the FLSA] and the great public policy which it embodies . . . militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee."

*Id*. at 1047 (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 685 (1946)). Instead of condemning the employee to perform uncompensated work due to an inability to provide precise proof of the extent of such work, the Court held, "an uncompensated employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687.

Tyson now claims that "because the jury must have rejected Mericle's estimate when it reduced the damages award by more than half, it will not be possible to know which workers are entitled to share in the award." *Bouaphakeo*, 136 S.Ct. at 1050. It is true that the combination of a non-bifurcated trial and the accompanying use of an aggregate jury award based on dollars

rather than minutes has lessened the precision with which the Court is able to distribute damages. But, as recognized by the Supreme Court, Tyson invited both problems by opposing bifurcation of the original trial and by its failure to keep complete records. Neither the lack of records for donning and doffing time nor the use of a non-bifurcated trial should be held against Plaintiffs, because Tyson is statutorily responsible for record-keeping and Plaintiffs proposed bifurcating the trial. "'The doctrine of invited error applies when the trial court announces its intention to embark on a specific course of action and defense counsel specifically approves of that course of action.'" *United States v. Jewell,* 614 F.3d 911, 920 (8th Cir.2010) (quoting *United States v. Mahler,* 141 F.3d 811, 815 (8th Cir.1998)). Plaintiffs proposed bifurcating the trial, and Tyson opposed it. Tyson supported the non-bifurcated trial, and having submitted the matter to the jury for an aggregate award in dollars, Tyson cannot now complain about the difficulties such an award may pose. *See Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 868 (8th Cir. 2011).

***The Award Shall Be Distributed According to Dr. Fox's First Proposed Method.*** Dr. Fox's first proposed method of distribution satisfies the jury verdict by removing the meal-adjacent donning and doffing minutes and distributing the jury's actual aggregate damages amount proportionally to Dr. Fox's proposed aggregate damages amount. For all the reasons stated above, this method of distribution reasonably resolves any uncertainties in favor of upholding the jury's verdict. This distribution method satisfies the Supreme Court case by ensuring no uninjured class members receive damages because: (1) individuals receiving damages must have worked 40 hours in a week without the aid of Dr. Mericle's minutes; and (2) individuals must have earned at least $50 in damages.

Upon the foregoing,

**IT IS ORDERED** that Defendant disburse the jury's aggregate award according to the method described in the Declaration of Liesel M. Fox, Ph.D., Docket Entry 412-2. Defendant's request for a new trial is **DENIED**.

**DATED** this 6th day of October, 2016.

_____
JOHN A. JARVEY, Chief Judge
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA